**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Steven Louis BUSCH, Samuel Thomas
Coleman, Jr., Defendants-Appellants.**

**Nos. 83–2165, 83–2174.**

United States Court of Appeals,
Tenth Circuit.

April 9, 1985.

James C. Lang of Sneed, Lang, Adams, Hamilton, Downie & Barnett and Ronald H. Mook, Tulsa, Okl. (G. Steven Stidham of Sneed, Lang, Adams, Hamilton, Downie & Barnett and Joel L. Wohlgemuth of Norman, Wohlgemuth & Thompson, Tulsa, Okl., with them on the brief), for defendants-appellants.

Kenneth Snoke, Asst. U.S. Atty., Tulsa, Okl. (Layn R. Phillips, U.S. Atty., and Ben F. Baker, Asst. U.S. Atty., Tulsa, Okl., with him on the brief), N.D. Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, McWILLIAMS and SEYMOUR, Circuit Judges.

McWILLIAMS, Circuit Judge.

Samuel Thomas Coleman, Jr. and Steven Louis Busch were jointly charged in a one-count indictment with, in effect, a violation of 18 U.S.C. § 201(e). More specifically, the allegation in the complaint was that Coleman and Busch, "acting in concert each with the other, did directly and corruptly ask, solicit, and accept from Morton Berger something of value, to wit: $8,000 cash for Steven Louis Busch, a witness for the plaintiff upon the trial of *United States v. McConnell and Stearns*, 82–CR–86, U.S. District Court, Northern District of Oklahoma, in return for said witness [i.e. Busch] being influenced in his testimony, or in return for said witness [i.e. Busch] absenting himself from said trial." The two defendants waived trial by jury. In a trial to the court, both defendants were convicted, and each was given a three-year suspended sentence and placed on probation for three years. Additionally, Coleman was fined $5,000, and Busch $2,500, said fines to be paid within six months. Both defendants appeal. We affirm.

A brief recital of the government's case will place the appeal in context. James McConnell was a defendant in a criminal fraud case brought by the United States in the United States District Court for the Northern District of Oklahoma. One of the government's witnesses in the *McConnell* case was Busch, one of the two defendants in the present proceeding. Busch himself was a plaintiff in a civil suit against McConnell to recover monies which Busch claimed were fraudulently obtained from him by McConnell. In that civil suit, Busch was represented by his long-time friend, Coleman, a licensed attorney in the

State of Oklahoma and one of the two defendants in the present proceeding.

In the criminal proceeding against McConnell, the United States was represented by Stephen P. Learned, a trial attorney with the United States Department of Justice in the Criminal Division, Fraud Section. McConnell was represented by Morton Berger, an attorney licensed to practice in the State of New York.

After the *McConnell* trial commenced, Berger determined that he would like to interview Busch before the latter testified against his client, i.e., McConnell. Knowing that Coleman represented Busch in the civil proceeding, Berger called Coleman and inquired as to whether it would be possible to interview Busch before the trial of McConnell resumed the following morning. As a result of this telephone call, Coleman and Busch came to Berger's motel room around eleven o'clock p.m.

Just what occurred at this motel meeting between Coleman, Busch, and Berger is the keystone of the government's case against Coleman and Busch. According to Berger, Coleman said, in almost so many words, that if money was forthcoming for Busch, Busch wouldn't be a "hostile witness" against McConnell, but that if there was no money forthcoming for Busch, then Busch would "bury" McConnell. Berger conceded that Coleman did most of the talking, but he also said that Busch was present during most of their one-hour meeting, though Busch did leave the room for a few minutes when he went down the hall to talk privately with McConnell, who was staying in the same Tulsa motel as Berger, his attorney.

The morning after Berger's meeting with Coleman and Busch at the motel, Berger reported their conversation to the United States Attorney and the judge who was presiding at the *McConnell* trial. The FBI was advised of the matter, and it was agreed that future conversations between Berger and either Coleman or Busch would be tape recorded. Over the next three days there were five tape recorded conversations. The use of transcripts of these five tape recorded conversations constitutes one of the major grounds for reversal, and is urged by both Busch and Coleman. Three of these transcripts were of telephone conversations between Coleman and Berger. One was of a conversation between Busch and Berger. The fifth, and last transcript, was of the conversation between Coleman, Busch, and Berger, at a meeting, again in Berger's motel room, which occurred at a time when the *McConnell* trial was still in progress.

Berger testified that at this last meeting of the three, $8,000 in currency was placed in an envelope and given Busch. Berger testified that, at the suggestion of government agents, he told Coleman and Busch that he would prepare a list of questions which he would like Busch to answer, and Coleman reportedly said he would pick up the list when Berger had prepared it. Coleman and Busch were arrested as they were leaving the motel.

Busch did not testify at his trial, but Coleman did. His testimony was that the money given Busch by Berger was by way of partial settlement of Busch's civil claim for fraud against McConnell, and that the only promise ever made concerning Busch's proposed testimony in McConnell's trial was that Busch would simply "tell the truth."

At trial, as a part of its case in chief, the government introduced, over objection of both defendants, transcripts of the five tape recorded meetings between Berger, Coleman, and Busch. On appeal, both defendants urge the admission of these transcripts as reversible error. Their argument is that statements made by a co-conspirator which implicate a fellow conspirator, who is not present at the time of the statements, may not be received in evidence against the absent co-conspirator unless and until there is evidence, independent of the statements themselves, establishing the existence of a conspiracy between the two. According to counsel, the trial court erred when it used the statements themselves to find the *prima facie* existence of a conspiracy between Busch

and Coleman. Whether such was actually the basis for the trial court's ruling is of no particular concern to us, as we view the evidence in a different light.

■ In the first place, Coleman cannot himself successfully complain about the use of the tape recorded statements which *he* made to Berger. Such were his own utterances, and, in varying degrees, were admissions admissible under Fed.R.Evid. 801(d)(2)(A). In like fashion, Busch is in no position to complain about the admission into evidence of transcripts of statements which he himself made to Berger.

■ Appellants also argue that certain statements of one tend to incriminate the other and that such statements may not be used absent independent evidence of a conspiracy. The general rule is that the utterances and acts of one conspirator are admissible against a co-conspirator, even though the latter was not present at the time of the act or utterances, *if* there be evidence, independent of the utterances or acts themselves, which shows the existence of a conspiracy. *United States v. Brewer*, 630 F.2d 795, 800–01 (10th Cir.1980); *United States v. Petersen*, 611 F.2d 1313, 1330 (10th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). And this is true even though, as here, the defendants are not formally charged with a conspiracy. *United States v. Rogers*, 652 F.2d 972, 976 (10th Cir.1981). In this regard, there is, in our view, evidence establishing, *prima facie*, a conspiracy between Coleman and Busch which antedates all of the tape recorded conversations.

As mentioned, there was a motel meeting involving Coleman, Busch, and Berger which preceded the first tape recorded conversation. And, as above indicated, this meeting was the centerpiece of the government's case. According to Berger, Coleman said, in Busch's presence and with no disclaimer by Busch, that if Berger would give money to Busch the latter would not be a hostile witness in the *McConnell* trial, but that if there was no payment, Busch would "bury" McConnell. Berger's credibility was, of course, a matter for the fact

finder, which, in this instance was the trial judge. But Berger's testimony concerning the motel meeting certainly established, *prima facie*, a conspiracy between Busch and Coleman, i.e., two actors in a scheme or plan to commit a criminal act. Such being the case, the subsequent statements by Coleman and Busch to Berger were admissible, not only against the declarant, but also against the absent co-conspirator. Accordingly, there was no error in admitting the transcripts of the five tape recorded meetings against *both* defendants.

Both appellants claim, on appeal, that they were charged under the wrong statute, and that instead of being charged with a violation of 18 U.S.C. § 201(e), they should have been more properly charged under 18 U.S.C. § 1512(a). We disagree.

Although we need not in the present case fix the outer limits of 18 U.S.C. § 201(e) and 18 U.S.C. § 1512(a), it would appear that § 201(e) is aimed at a witness, or potential witness, who corruptly solicits or receives something of value in return for which he will be influenced in his testimony. § 1512(a), on the contrary, appears, *inter alia*, to be aimed at one who in one way or another tampers with a witness, or potential witness.

■ As far as Busch is concerned, it would appear that § 201(e) fits him like a glove, i.e., a witness who solicits and receives something of value in return for influencing his testimony, and that § 1512(a) would be a variance with the facts of his case.

■ As concerns Coleman, his argument is that § 201(e) applies only to a witness, or potential witness, who solicits or receives something of value in return for influencing *his* testimony, and that inasmuch as he, Coleman, was not even a potential witness in the *McConnell* trial, charging him with a violation of § 201(e) was incorrect, and that § 1512(a) was the more appropriate statute as concerns him. Coleman asserts that the government's statements that he was charged as a principal prejudicially misled

him into waiving jury trial and failing to call certain witnesses.

The government responds to this argument by relying on 18 U.S.C. § 2. Under this section, a defendant charged as a principal, as was Coleman, may be convicted upon a showing that he was an "aider and abettor." *E.g. Lawrence v. United States,* 357 F.2d 434, 438 (10th Cir.1966); *United States v. Provenzano,* 334 F.2d 678, 691 (3d Cir.1964), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964). This statute was designed to abolish the historical distinction between an accessory before the fact and a principal, to the end that an aider or abettor may be charged, tried, and punished as a principal. *Standefer v. United States,* 447 U.S. 10, 18–20, 100 S.Ct. 1999, 2005–06, 64 L.Ed.2d 689 (1980); *Lambert v. United States,* 226 F.2d 602, 604 (5th Cir.1955), *cert. denied,* 350 U.S. 988, 76 S.Ct. 474, 100 L.Ed. 855 (1955). Certainly the facts of the instant case, viewed in a light most favorable to the judgment of the trial court, show that Coleman was not just aiding and abetting Busch, but in reality was orchestrating the entire scheme. Accordingly, by virtue of section 2, Coleman is deemed to be a principal for all purposes. Coleman, under the facts of this case, was properly charged under § 201(e).

As above stated, Busch did not testify at trial, but Coleman did. On cross-examination of Coleman, the prosecution made inquiry calculated to disclose prior misconduct, of one sort or another, on the part of Coleman. Objection was made by Coleman, which objection was sustained. Coleman and Busch then moved for a mistrial, which motion was denied by the trial judge, who commented that this was a trial to the court, sitting without a jury, and that he could, and would, disregard the entire matter.

On appeal, Coleman himself does not claim error in this regard, but Busch, surprisingly does, claiming that he was, despite the trial judge's disclaimer, prejudiced by even the suggestion that his lifetime friend, *Coleman,* was guilty of prior misdeeds. We are not persuaded. This was a trial to the court, and in such circumstance, even the reception of inadmissible evidence is not grounds for reversal where the record shows, as it does in the instant case, that the improper evidence played no part in the trial judge's deliberations. *United States v. Larsen,* 596 F.2d 347–48 (9th Cir.1979). Here, the trial judge *rejected* the proffered evidence, and stated he would disregard the entire matter. This particular argument is *de minimis.*

Judgments affirmed.