810 F.2d 947
 22 Fed. R. Evid. Serv. 659
 UNITED STATES of America, Plaintiff-Appellee,
v.
Gerardo Antonio GOMEZ, a/k/a Jerry Gomez, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mickey CROCKER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kelly Lynn HANLON, a/k/a Leslie Ann Warren, Defendant-Appellant.
 Nos. 84-1555, 84-1583 and 84-1584.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 30, 1987.
 
 Kenneth P. Snoke, Asst. U.S. Atty., Tulsa, Okl. (Layn R. Phillips, U.S. Atty., Tulsa, Okl., was also on the brief) for plaintiff-appellee.
 Vicki Mandell-King, Asst. Federal Public Defender, Denver, Colo. (Michael G. Katz, Federal Public Defender, Denver, Colo., was also on the brief) for defendant-appellant Gerardo Antonio Gomez.
 Paul D. Brunton, Tulsa, Okl., for defendant-appellant Mickey Crocker.
 Larry A. Gullekson, Gullekson, Thompson & Daniels, Tulsa, Okl., filed a brief for defendant-appellant Kelly Lynn Hanlon.
 Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and SAFFELS, District Judge*.
 HOLLOWAY, Chief Judge.
 
 
 1
 This case arises out of a large-scale "hub conspiracy" centered in Tulsa, Oklahoma, and Miami, Florida. Count one alleged that all three defendants--Gerardo Gomez, Kelly Hanlon and Mickey Crocker--were engaged in a conspiracy to possess cocaine with intent to distribute. Count two alleged that defendant Hanlon possessed approximately nine ounces of cocaine on October 7, 1982, with intent to distribute. Pursuant to a jury verdict, the trial court entered a judgment of conviction against each of the defendants on count one and Hanlon on count two.[1] We affirm.
 
 I.
 The factual background
 
 2
 Considered as it must be at this juncture in the light most favorable to the jury's verdict, the record tends to show the following:
 
 
 3
 In 1980 David Bradshaw met defendant Gomez in Florida. Shortly thereafter Bradshaw began purchasing large quantities of cocaine from Gomez. On some of these occasions Bradshaw would travel alone to Miami for the transaction; at other times he would go with his girlfriend, defendant Hanlon. Later Bradshaw enlisted the assistance of Terry Smith and Leon Miller, who would go to Florida to make the purchase from Gomez and then deliver the cocaine to Bradshaw at his home in Watts, Oklahoma. Bradshaw would then sell the cocaine to a number of "retailers," including Stanley Tucker, Terry Smith, Leon Miller, John Smith, Greg Clark, Thomas Henderson, Charles Binney and Sharon Lawrence. Tucker, in turn, sold part of the cocaine he received to defendant Crocker.
 
 
 4
 Bradshaw distributed most of the cocaine in Tulsa. Typically he and Hanlon would rent a hotel room for a few days where they would prepare the cocaine for sale and make the exchange. After one such session at the Howard Johnson's Inn on October 7, 1982, Bradshaw and Hanlon were stopped in a stolen vehicle on a Tulsa highway. During the ensuing search of the trunk, police officers found $4750 in cash, 239 grams of cocaine, and a telephone book containing encoded telephone numbers for "Jerry" and several of Bradshaw's customers in a section entitled "Frequently Called Numbers." Bradshaw was then arrested and Corporal Harold Wells drove Hanlon home.
 
 
 5
 Defendants Gomez and Hanlon elected not to put on any evidence. Crocker called one witness, Roseann Carrothers, who testified that she had purchased cocaine from Crocker, but she did not identify Crocker as one of her cocaine sources when asked to name such individuals during questioning at the trial of Jim Darby. IV R. 753-55.
 
 II.
 
 6
 Gomez' and Hanlon's challenges to the admissibility of
 
 
 7
 out-of-court statements by David and J.D. Bradshaw
 
 
 8
 Because much of the Government's proof consisted of out-of-court declarations by David and J.D. Bradshaw, the court held a pretrial hearing to determine whether the anticipated testimony was admissible under the coconspirator exception codified in Fed.R.Evid. 801(d)(2)(E). Under that exception, out-of-court declarations by coconspirators are admissible if the Government can first establish, by substantial independent evidence, that a conspiracy existed in which the declarant and the defendant against whom the statement was offered were members of it. Moreover, on appropriate motion at the conclusion of all the evidence, the court must specifically find, from a preponderance of the evidence, that these two elements were met and that the statements were made during the course and in furtherance of the conspiracy. United States v. Petersen, 611 F.2d 1313, 1330-31 (10th Cir.1979), cert. denied, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). The trial court found that the Petersen-Andrews requirements were met and allowed several Government witnesses to testify regarding out-of-court declarations by David Bradshaw and his father. Because the issues presented by Hanlon and Gomez differ in several respects, we will address their contentions separately.
 
 A.
 Gomez' appeal
 
 9
 The court allowed several Government witnesses--including Stanley Tucker, Terry Smith and Greg Clark--to testify that David Bradshaw had identified defendant Gomez as his supplier of cocaine. On appeal, Gomez argues that these rulings were erroneous because: (1) the court did not make a finding at the close of all the evidence regarding the sufficiency of the foundation under the coconspirator exception; (2) there was insufficient independent evidence to connect Gomez to the conspiracy; (3) the out-of-court statements were not "in furtherance" of the conspiracy; and (4) admission of the evidence violated Gomez' Sixth Amendment right of confrontation.
 
 1.
 
 10
 Necessity of findings at the close of all the evidence
 
 
 11
 As noted, the court conducted a pretrial hearing to determine whether David Bradshaw's out-of-court declarations were admissible under Fed.R.Evid. 801(d)(2)(E). At the conclusion of that hearing, the court held that the statements were admissible, finding that the Government had presented substantial independent evidence that a conspiracy existed in which Bradshaw and Gomez were members. After the Government had presented all of its evidence at trial, defendant Gomez moved for a judgment of acquittal and "renew[ed] all previous motions previously noted." The court overruled the motion and reaffirmed its earlier ruling that Bradshaw's out-of-court declarations were admissible under Fed.R.Evid. 801(d)(2)(E).[2] Subsequently, after the defense rested, Gomez' counsel stated: "I would again move for a judgment of acquittal pursuant to Rule 29, and renew all my prior motions." That motion was also overruled. In this appeal, Gomez argues that the court erred in failing to make a finding, based on a "preponderance of the evidence" standard, regarding each of the three elements enunciated in Petersen.
 
 
 12
 The trial court must make the required findings regarding the three elements of Rule 801(d)(2)(E) if the defendant objects on hearsay grounds. See United States v. Alfonso, 738 F.2d 369, 371 (10th Cir.1984) (per curiam). Here the district court made extensive findings with respect to each of the three elements of Rule 801(d)(2)(E) before admitting Bradshaw's out-of-court statements. Nonetheless, Gomez points out that the court did not explicitly apply the "preponderance of the evidence" standard at the close of all the evidence. As we said in Petersen, however, such a procedure is necessary only if the defendant makes an "appropriate motion." 611 F.2d at 1330-31; see also United States v. Rivera, 778 F.2d 591, 596 (10th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1384, 89 L.Ed.2d 609 (1986). While the defendant need not specifically ask for such findings, he must at least alert the court to the fact that he is objecting on hearsay grounds. See United States v. Monaco, 700 F.2d 577, 581 n. 3 (10th Cir.1983). In this case defense counsel did no more than move for a judgment of acquittal and renew all of his previous objections made during the course of this four-day trial. We do not think that such an objection is sufficiently specific to alert the court to the need for additional findings pursuant to Petersen. See United States v. Bulman, 667 F.2d 1374 & n. 7 (11th Cir.), cert. denied, 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982); see also Fed.R.Evid. 103(a)(1).
 
 
 13
 We hold that the court did not commit reversible error in admitting Bradshaw's out-of-court declarations without making additional findings on the record, at the close of the testimony, based on a "preponderance of the evidence" standard.
 
 2.
 
 14
 Sufficiency of the evidence regarding Gomez' connection to
 
 
 15
 the conspiracy
 
 
 16
 Gomez also argues that the Government did not present sufficient independent evidence to connect him to the conspiracy. We disagree and hold that the court's ruling under Rule 801(d)(2)(E) was supported by a preponderance of the evidence.
 
 
 17
 First, several Government witnesses testified that they had seen Gomez selling cocaine to Bradshaw and Miller. Terry Smith testified that he and Leon Miller met Gomez at a Miami shopping center in August 1982. When Gomez arrived Miller gave him a suitcase. Gomez then entered Smith's automobile and directed him to an apartment complex. When they arrived Gomez disappeared with the suitcase. A few minutes later someone returned and placed the same suitcase in the back of the car. Smith then drove his wife and Leon Miller to Oklahoma. Greg Clark also saw Gomez in Miami. Clark testified that he had met Bradshaw and Miller at a Miami hotel in order to buy one kilogram of cocaine. Bradshaw made some phone calls and waited for Gomez to arrive. Eventually Gomez arrived and Bradshaw handed him a shopping bag containing approximately $100,000 in cash. Gomez put the bag in the trunk and he and Bradshaw entered the car and drove away. Bradshaw was gone approximately one to two hours. Bradshaw then met Clark at the hotel and handed him the shopping bag, which now contained approximately five kilograms of cocaine. Clark took one kilogram of cocaine and left.[3]
 
 
 18
 Second, Gomez himself made inculpatory remarks which were properly introduced as admissions of a party-opponent. Fed.R.Evid. 801(d)(2)(A); see United States v. Busch, 758 F.2d 1394, 1396-97 (10th Cir.1985). The first such statement was made to Terry Smith. Smith accompanied Bradshaw to Miami in the summer of 1982. Shortly after their arrival, Bradshaw left with Eduardo and Carlos, two relatives of Gomez. While they were gone, Gomez came to speak with Bradshaw and waited for approximately one hour before leaving. During that time Smith commented that "they were in a pretty open business there in Florida." Gomez replied "that they took care of their problems before they became problems." There was also evidence that Gomez had threatened Greg Clark in a telephone conversation in late October of 1982. At that time Clark owed Bradshaw a large sum for previous cocaine purchases. Bradshaw said that "Jerry" wanted to speak to Clark about the debt and he then dialed a long-distance number. The person on the other end spoke with a Spanish accent, and said "that this was a real serious deal and that [Clark had] better meet [his] obligations, he could have any number of people shoot [Clark] for a hundred dollars whenever he wanted it done, that [Clark had] better pay [his] bill and do it fast."[4]
 
 
 19
 Finally, there was abundant circumstantial evidence connecting Gomez to the conspiracy. Tulsa police found notations to Gomez' phone numbers, which were encoded, during searches of two alleged coconspirators, Rusty Hall and David Bradshaw. Telephone toll and pen register records showed a number of calls between Bradshaw and Gomez.[5] Furthermore, Rusty Hall and David Bradshaw were found with approximately six pounds of cocaine within one month of a series of phone calls between themselves and Gomez.
 
 
 20
 We hold that the court's finding that Gomez was a member of the conspiracy for purposes of Fed.R.Evid. 801(d)(2)(E) was supported by a preponderance of the evidence presented at trial.
 
 3.
 
 21
 "In furtherance" of the conspiracy
 
 
 22
 Gomez also contends that Bradshaw's out-of-court declarations were not made "in furtherance of the conspiracy," as required under Rule 801(d)(2)(E). As noted, Bradshaw's out-of-court statements consisted of his telling various coconspirators that his source of cocaine was Jerry Gomez. Gomez contends that these statements were not designed to assure the listeners' continued participation for they already knew that Bradshaw had a reliable source of cocaine. We disagree.
 
 
 23
 Statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met. United States v. Ammar, 714 F.2d 238, 252 (3d Cir.1983). While Bradshaw's statements might have been unnecessary, at least in the technical sense urged by Gomez,[6] that information was nonetheless useful to allay the coconspirators' possible suspicions regarding the continued availability of cocaine. See United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir.1985). Thus Bradshaw's statements identifying Gomez as his supplier were in furtherance of the conspiracy and admissible under Rule 801(d)(2)(E). See United States v. Crocker, 788 F.2d 802, 805 (1st Cir.1986).
 
 4.
 Sixth Amendment right of confrontation
 
 24
 Finally, Gomez argues that the admission in evidence of Bradshaw's out-of-court statements violated his Sixth Amendment right of confrontation. We note initially, however, that Gomez did not raise this objection at trial and that ordinarily a party may not present a Confrontation Clause objection for the first time on appeal. E.g., United States v. Shepherd, 739 F.2d 510, 514 (10th Cir.1984). In any event, the ruling does not amount to plain error. See Fed.R.Crim.P. 52(b); Fed.R.Evid. 103(d).
 
 
 25
 The Confrontation Clause and the hearsay rules have not been equated. Thus testimony which might not contravene the hearsay rule because of an exception, such as the coconspirator exception in Rule 801(d)(2)(E), can still run afoul of the Sixth Amendment. United States v. Roberts, 583 F.2d 1173, 1176 (10th Cir.1978), cert. denied, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 49 (1979). When the declarant is not produced at trial, as in this case, his statements are admissible only if they bear adequate "indicia of reliability." Ohio v. Roberts, 448 U.S. 56, 65-66, 100 S.Ct. 2531, 2538-39, 65 L.Ed.2d 597 (1980);[7] see Dutton v. Evans, 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970) (plurality opin.). Here, several such indicia of reliability are present. First, Bradshaw was in a position to have personal knowledge of his supplier's identity. Second, the possibility that Bradshaw's statements were founded on faulty recollection is extremely remote. Finally, the statements tend to incriminate Bradshaw so they can be said to be against his penal interest.[8] See United States v. Alfonso, 738 F.2d 369, 372 (10th Cir.1984) (per curiam); United States v. McManaman, 606 F.2d 919, 927 n. 11 (10th Cir.1979).
 
 
 26
 In sum, we hold that the admission in evidence of Bradshaw's out-of-court statements did not violate Gomez' Sixth Amendment right of confrontation.[9]
 
 B.
 Hanlon's appeal
 
 27
 We now turn to the hearsay arguments in Hanlon's appeal. At the conclusion of the pretrial hearing the court found that there was substantial independent evidence that a conspiracy existed and that its members included Hanlon, David Bradshaw, and J.D. "Sock" Bradshaw. The court allowed several Government witnesses to relate out-of-court statements made by David and J.D. Bradshaw. Hanlon argues that these out-of-court statements should have been excluded because the Government's evidence showed the existence of a series of unrelated drug transactions rather than a single conspiracy and that there was insufficient nonhearsay evidence of her participation in that conspiracy.
 
 1.
 Existence of a single conspiracy
 
 28
 First, Hanlon argues that each trip to Florida constituted a distinct conspiracy, and that some of the out-of-court statements related to trips in which she was not involved. However, the existence of a number of separate transactions does not require the finding of separate conspiracies. United States v. Behrens, 689 F.2d 154, 160 (10th Cir.), cert. denied, 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982); United States v. Parnell, 581 F.2d 1374, 1382 (10th Cir.1978), cert. denied, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979). We must determine whether the district court could reasonably have found that the various trips to Florida "constituted essential and integrative steps toward the realization of a common, illicit goal." United States v. Dickey, 736 F.2d 571, 582 (10th Cir.1984) (quoting United States v. Brewer, 630 F.2d 795, 799 (10th Cir.1980)), cert. denied, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). Here the court found that there was a single conspiracy to acquire cocaine from Miami for redistribution in the Northern District of Oklahoma, and that finding is fairly supported by the record. See United States v. Pilling, 721 F.2d 286, 292-93 (10th Cir.1983).
 
 
 29
 We hold that the court's finding of a single conspiracy was not in error.
 
 2.
 Connection of Hanlon to the conspiracy
 
 30
 Hanlon also argues that there was no independent evidence to connect her to the conspiracy and that the finding to the contrary was based on her "mere association" with Bradshaw.[10] We disagree, finding abundant nonhearsay proof, at both the pretrial hearing and at trial, showing Hanlon's active participation in Bradshaw's ongoing cocaine scheme. First, several members of the conspiracy testified that Hanlon had performed numerous tasks for Bradshaw's cocaine business. Several coconspirators testified that Hanlon had paid Gomez for cocaine previously purchased by Bradshaw, delivered cocaine to Tucker, received payment from him, and helped Bradshaw collect on Greg Clark's cocaine debt.
 
 
 31
 Second, there was abundant evidence that Hanlon played an active role during various cocaine transactions conducted at hotels in Tulsa and Miami. For example, Hanlon often registered at the hotels for Bradshaw and herself, using an alias and listing fictitious addresses and vehicles. See United States v. Silverman, 771 F.2d 1193, 1200 (9th Cir.1985) ("[g]iving a false identity is admissible as evidence of consciousness of guilt"). Typically Bradshaw's cocaine customers would call the hotel to arrange a purchase and Hanlon would answer the telephone and door when the transaction actually took place. In addition, Hanlon rented a locker in Tulsa in which she and Bradshaw stored the cocaine.
 
 
 32
 Finally, on October 7, 1982, Hanlon accompanied Bradshaw in a stolen vehicle containing $4750 and 239 grams of cocaine in the trunk. Hanlon was carrying $7500 in her purse. Shortly after the car was stopped Hanlon offered to help the Tulsa police make another arrest involving fifty pounds of cocaine which was then located in Florida.[11]
 
 
 33
 We conclude that there was sufficient independent evidence to support the finding regarding Hanlon's participation in the conspiracy.[12]
 
 III.
 
 34
 Admissibility of Stanley Tucker's testimony
 
 
 35
 Defendant Crocker contends that the court erred in denying his pretrial motion in limine to exclude Stanley Tucker's testimony. Prior to trial Tucker made an agreement with the Government under which he revealed all his criminal activities, he pled guilty to a telephone count on distribution of cocaine, all other charges against him were dropped and he was sentenced to three years' imprisonment. Tucker then filed a motion for a reduction of sentence under Fed.R.Crim.P. 35, and an Assistant United States Attorney agreed to support the motion on the condition that Tucker fully cooperate with the Government and testify truthfully against Crocker and the other defendants. The Government then successfully moved to stay the court's consideration of Tucker's Rule 35 motion until the conclusion of this trial.
 
 
 36
 Crocker argued strenuously in the trial court, as he does on appeal, that the contingent nature of the Government's agreement to support the Rule 35 motion created undue governmental influence over Tucker's testimony and resulted in a denial of due process for Crocker. We feel that the district court properly held that the nature of Tucker's agreement affected only the weight, not the admissibility, of his testimony. The Government may impose the duty to give truthful testimony as a condition of favorable treatment. E.g., United States v. Moody, 778 F.2d 1380, 1384 (9th Cir.1985). It would appear that the Government attorney intended to guarantee compliance with the condition by delaying the court's consideration of Tucker's Rule 35 motion.[13] However, there is nothing sinister or unduly coercive in such an arrangement. See United States v. Insana, 423 F.2d 1165, 1168-69 (2d Cir.), cert. denied, 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970).
 
 
 37
 Each of the defendants cross-examined Tucker extensively on a variety of subjects, including the status of his Rule 35 motion. Moreover, the district court properly cautioned the jury about the weight to be accorded testimony from an accomplice or a witness motivated by a possible "reduction of punishment." Supp. IV 859-61; see United States v. Insana, 423 F.2d at 1168-69. We find no error in the court's decision to let a properly instructed jury resolve the question of Tucker's credibility. See Hoffa v. United States, 385 U.S. 293, 311-12, 87 S.Ct. 408, 418-19, 17 L.Ed.2d 374 (1966).
 
 
 38
 Crocker's reliance on Williamson v. United States, 311 F.2d 441 (5th Cir.1962), and United States v. Waterman, 732 F.2d 1527 (8th Cir.1984), cert. denied, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985), is misplaced. In Williamson, the Government agreed to pay an informer $100-$200 only if he could "catch" two individuals then under investigation. Both parties carried out the bargain, and the two targeted individuals were brought to trial. 311 F.2d at 441-44. The Fifth Circuit held, however, that the informer should not have been allowed to testify at trial since the contingent fee arrangement created an intolerable danger of entrapment. Id. at 444-45.
 
 
 39
 That danger is not present here since the agreement obligated Tucker only to testify regarding known facts, rather than to seek out additional evidence for the Government to use. See United States v. Dailey, 759 F.2d 192, 199 (1st Cir.1985); United States v. Librach, 536 F.2d 1228, 1230 (8th Cir.), cert. denied, 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). Additionally, we note that the Fifth Circuit has confined Williamson to its facts. See United States v. Yater, 756 F.2d 1058, 1067 (5th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985); United States v. Edwards, 549 F.2d 362, 365 (5th Cir.), cert. denied, 434 U.S. 828, 98 S.Ct. 107, 54 L.Ed.2d 87 (1977); United States v. Garcia, 528 F.2d 580, 586 (5th Cir.), cert. denied, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976); United States v. Dickens, 524 F.2d 441, 446-47 (5th Cir.1975), cert. denied, 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976); United States v. Jenkins, 480 F.2d 1198, 1199-1200 (5th Cir.) (per curiam), cert. denied, 414 U.S. 913, 94 S.Ct. 256, 38 L.Ed.2d 151 (1973); Hill v. United States, 328 F.2d 988, 988-89 (5th Cir.) (per curiam), cert. denied, 379 U.S. 851, 85 S.Ct. 94, 13 L.Ed.2d 54 (1964); see also United States v. Gray, 626 F.2d 494, 499 (5th Cir.1980) ("an informant's testimony will not be rejected unless there is evidence that he was promised payment contingent upon conviction of a particular person"), cert. denied, 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981); accord United States v. Frazier, 434 F.2d 238, 239-40 (10th Cir.1970) (distinguishing Williamson ); Maestas v. United States, 341 F.2d 493, 495 (10th Cir.1965) (same). But cf. United States v. Cervantes-Pacheco, 793 F.2d 689, 690-95 (5th Cir.1986) (reversing a conviction because of a contingency fee paid to a Government informant).
 
 
 40
 The Waterman opinion was vacated by the Eighth Circuit sitting en banc, and is no longer of precedential value. 732 F.2d at 1533. See United States v. Saterdalen, 769 F.2d 494, 496 (8th Cir.1985) (per curiam); United States v. Fazzino, 765 F.2d 125, 126 (8th Cir.) (per curiam), cert. denied, --- U.S. ----, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985).
 
 
 41
 As noted, here the agreement made with Tucker was limited to the conditions that Tucker plead guilty to one count and fully cooperate with the Government and testify truthfully against Crocker and the other defendants, in which case the Government would support Tucker's motion to reduce his sentence, and the Government would also not prosecute any other charges. Further, the circumstances included the fact that the Government moved successfully to stay consideration of Tucker's Rule 35 motion until after the trial. We hold that in these circumstances the court's denial of Crocker's motion in limine to exclude Tucker's testimony was not error.
 
 IV.
 
 42
 Evidence regarding Crocker's prior misconduct
 
 
 43
 Crocker also contends that the trial court erred in allowing two Government witnesses, Terry Smith and Nelson Carter, to testify regarding previous misconduct of Crocker. According to Crocker, the superseding indictment did not encompass these prior "bad acts," and the testimony was thus inadmissible under Fed.R.Evid. 404(b).
 
 
 44
 Terry Smith related an out-of-court statement made by David Bradshaw while the two men were looking for Crocker in a Tulsa bar. According to Smith, Bradshaw "said that he liked to play the harmonica with [Crocker] when he was playing, and that they snorted a lot of coke." Supp. II R. 154-55. Defense counsel made no objection at that time but subsequently Crocker's counsel did cross-examine Smith and then asked that the jury be admonished to disregard the statement. Counsel argued, as he does here, that the testimony related to uncharged misconduct because Smith was unable to say when Bradshaw had made the statement. The court overruled the objection on the condition that the Government establish that Bradshaw's statement was made during the conspiratorial period alleged in the indictment. Smith then testified that Bradshaw had made the statement in 1982.
 
 
 45
 As noted, Smith testified that Bradshaw's statement was made in 1982. Moreover, Smith later testified that Bradshaw was referring to an incident that occurred "in late spring or early summer of '82." Supp. II R. 190. Thus both Bradshaw's statement and the underlying incident occurred within the alleged conspiratorial period and the testimony did not relate to "other crimes" within the meaning of Fed.R.Evid. 404(b). United States v. Zielie, 734 F.2d 1447, 1456 (11th Cir.1984).[14]
 
 
 46
 The same is true of Carter's testimony. On direct examination Carter testified that he had purchased cocaine from Crocker three or four times in 1981. Defense counsel argued, as he does here, that Carter's testimony related to uncharged misconduct since there was no evidence that Crocker had obtained this cocaine from any of the suppliers named in the superseding indictment.
 
 
 47
 The superseding indictment alleged that Crocker had obtained cocaine from a number of sources, including Tucker, between April 1, 1980, and May 23, 1983. As noted, Carter's cocaine purchases from Crocker took place in 1981, well within the alleged conspiratorial period. Moreover, there was evidence that the cocaine sold to Carter had been acquired from Tucker, as charged in the indictment. Tucker testified that he had met Crocker in February or March of 1981 and that the two began engaging in drug transactions approximately one month later. Tucker added that these dealings continued until the summer of 1982. Supp. II R. 291; see also Supp. III R. 591 (Omer Carrothers' testimony that Crocker had introduced him to Tucker in the summer of 1982).
 
 
 48
 Thus the court might reasonably have found that the same cocaine was purchased from Tucker and later redistributed to Carter in 1981. See Fed.R.Evid. 104(a) & (b). We therefore hold that Carter's testimony related to the same conduct as that charged in the superseding indictment and that Fed.R.Evid. 404(b) was therefore inapplicable.
 
 V.
 
 49
 Denial of Crocker's motion to dismiss the superseding
 
 
 50
 indictment because of prosecutorial misconduct
 
 
 51
 before the grand jury
 
 
 52
 Crocker argues that the court erred in denying his pretrial motion to dismiss the superseding indictment because of prosecutorial misconduct before the grand jury.
 
 
 53
 The dispute arose out of an error in Agent Weber's grand jury account of earlier testimony by Omer and Roseann Carrothers in a trial involving James Darby. There the Carrothers testified for the Government, identifying several individuals who had sold cocaine to Darby. Crocker's name was not mentioned. However Agent Weber, who served as the Government's case agent in that trial, mistakenly believed that Crocker had been implicated in the Carrothers' testimony, and he related that "fact" to the grand jury. The error went uncorrected even though the prosecutor questioning Weber had earlier questioned the Carrothers at Darby's trial. Crocker strenuously argues here, as he did in the trial court, that Weber's erroneous account of the Carrothers' previous testimony was the only incriminating evidence presented to the grand jury, and that the Government attorney's failure to disclose the error required dismissal of the superseding indictment.
 
 
 54
 The remedy of dismissal of an indictment is an extraordinary one applied to insure proper standards of conduct by the prosecution. An indictment may be dismissed for prosecutorial misconduct so flagrant that there is some significant infringement on the grand jury's ability to exercise independent judgment. United States v. Buchanan, 787 F.2d 477, 487 (10th Cir.1986). We have recently noted that "[r]eported cases where an appellate court has upheld a district court's dismissal of an indictment because of alleged prosecutorial misconduct are few and far between." United States v. Anderson, 778 F.2d 602, 606 (10th Cir.1985). Likewise, we are not persuaded that the Government attorney's failure to disclose the error in Agent Weber's testimony infringed on the grand jury's ability to exercise independent judgment. See United States v. Page, 808 F.2d 723, 726 (10th Cir.1987).
 
 
 55
 We find no error in the court's refusal to dismiss the superseding indictment against Crocker for prosecutorial misconduct.
 
 VI.
 
 56
 Admissibility of money and cocaine found in the automobile
 
 
 57
 search of October 7, 1982
 
 
 58
 Defendant Hanlon contends that the Tulsa police lacked probable cause to conduct the automobile search on October 7, 1982, and that the district court thus erred in admitting the fruits of that search in evidence.
 
 
 59
 On that date three Tulsa police officers stopped a gold Lincoln Town Car being driven by Bradshaw. A subsequent search of the trunk revealed approximately 239 grams of cocaine, $4750 in cash, and a telephone book owned by Bradshaw. The officers also found approximately $7500 in Hanlon's purse. Prior to trial Hanlon moved to suppress these items and the parties stipulated that the court's consideration of the motion should be restricted to the testimony presented in another hearing involving a similar motion by Bradshaw. The court denied Hanlon's motion, holding that she lacked standing to challenge the search and incorporating its earlier findings on probable cause.
 
 
 60
 On appeal Hanlon contends that the court's findings were erroneous. However, we are unable to properly evaluate this issue since the Bradshaw transcript was not included in our record on appeal. We thus decline to reach the merits of Hanlon's Fourth Amendment contentions. See Fed.R.App.P. 10(b) & 11(a); United States v. Hart, 729 F.2d 662, 671 (10th Cir.1984), cert. denied, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985).
 
 VII.
 
 61
 Sufficiency of the evidence regarding guilt
 
 
 62
 Both Gomez and Hanlon challenge the sufficiency of the evidence with respect to guilt. We view the entire record in the light most favorable to the Government to determine whether the evidence, together with all reasonable inferences to be drawn therefrom, is such that the jury could find the defendants guilty beyond a reasonable doubt. It is not our function to weigh conflicting evidence or consider the credibility of witnesses. United States v. Petersen, 611 F.2d 1313, 1317 (10th Cir.1979), cert. denied, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980).
 
 
 63
 Gomez contends that the evidence was insufficient to show his participation in the cocaine conspiracy. However, the Government presented abundant nonhearsay evidence identifying Gomez as the individual supplying Bradshaw with cocaine. In addition, Greg Clark testified that Bradshaw identified one of his cocaine sources as a South American named "Jerry Gomez." Supp. III R. 431-32, 551; see also Supp. II R. 170 (Terry Smith's testimony that Bradshaw had identified his source as "Jerry"); Supp. II R. 261 (Stanley Tucker's testimony that Bradshaw had identified his cocaine sources as some Colombians living in Miami). We feel the Government's independent evidence, when coupled with Bradshaw's out-of-court statements, provides ample support for Gomez' conviction on the conspiracy count.
 
 
 64
 The same is true with respect to Hanlon's challenge to the sufficiency of the evidence on count two, which alleged that she knowingly possessed nine ounces of cocaine with intent to distribute. We feel the evidence was sufficient to prove possession. Hanlon was a passenger in Bradshaw's car when the cocaine was found. Moreover, the Government presented considerable nonhearsay evidence of her active participation in Bradshaw's cocaine scheme. Among this evidence was Hanlon's statement, after the cocaine was found, that she could call one of three people in Miami and have fifty pounds of cocaine brought to Tulsa. Supp. II R. 214-15, 217-18. Furthermore we conclude that the Government sufficiently proved Hanlon's intent to distribute the cocaine. The Government demonstrated that she had already assisted Bradshaw in numerous cocaine sales for over one year. Moreover, the 239 grams of cocaine found in the automobile was more than Hanlon would have possessed for her own use. See United States v. Gay, 774 F.2d 368, 372 (10th Cir.1985).
 
 
 65
 We hold that the evidence was sufficient to support the convictions of Gomez for conspiracy and Hanlon for possession of cocaine with intent to distribute.
 
 VIII.
 Prosecutorial misconduct at trial
 
 66
 Finally, Hanlon argues that the Government's closing argument misstated the evidence and referred to "inflammatory" evidence that Hanlon was married to Bobby Johnson, a codefendant.
 
 
 67
 Since Hanlon did not object at trial to the prosecutor's closing remarks, our review is under the plain error standard of Fed.R.Crim.P. 52(b). See United States v. Young, 470 U.S. 1, 6-7, 105 S.Ct. 1038, 1042-43, 84 L.Ed.2d 1 (1985). Here, all but one of the prosecutor's remarks were supported by the evidence. The only exception is the prosecutor's incorrect statement that Hanlon was arrested on October 7, 1982, although the Government now concedes that she was not arrested until much later. However, the date of Hanlon's arrest was irrelevant to the question of guilt and the prosecutor's remark could not have affected the outcome. Finally, we conclude that Hanlon's marriage to a codefendant was relevant to the Government's conspiracy theory, and that the prosecutor's reference to this evidence during closing arguments was proper. The Government's closing arguments did not violate Hanlon's fundamental rights.
 
 IX.
 
 68
 No reversible error has been demonstrated and the judgments are accordingly
 
 
 69
 AFFIRMED.
 
 
 
 *
 The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 The trial court sentenced Crocker to a prison term of 30 months and Gomez to a prison term of 10 years and a $25,000 fine. Hanlon received a 6 year sentence under count one. For count two, Hanlon was given a concurrent sentence of 6 years' imprisonment, with a special parole term of 4 years
 
 
 [2]
 The court stated:
 At the conclusion of all of the evidence in the case, and outside the hearing of the jury, the Court wishes to make the additional record that the Court at this time readopts its findings and conclusions in reference to the Petersen-Andrews hearing had in this case about ten days ago, and after having heard all the government's evidence in this case, the Court again concludes that the evidence is sufficient for submission to the jury to determine whether or not there is a conspiracy in this case, whether all the persons indicted or unindicted in Count One of the indictment in this case were members of that conspiracy--there is sufficient evidence to determine that they all were--and that the statements made that have been admitted in evidence here are statements that comport with the requirement of Federal Rule of Evidence 801(d)(2)(E) having to do with, quote, a statement by a co-consirator of a party during the course and in the furtherance of the conspiracy; that the statements made that have been received in evidence here were in the furtherance of the conspiracy.
 Supp. IV R. 747-49.
 
 
 [3]
 Gomez argues that Terry Smith and Greg Clark were not credible witnesses because they had received unusually attractive plea agreements. We note, however, that counsel for each of the defendants conducted a thorough cross-examination of Smith and Clark with respect to their prior convictions and plea agreements. The evaluation and resolution of Smith's and Clark's credibility were matters for the trier of fact, not for the appellate court. United States v. Metropolitan Enterprises, Inc., 728 F.2d 444, 450 (10th Cir.1984)
 
 
 [4]
 Gomez points out that Clark could not identify him in court as the person on the line. However, we note "[c]ourtroom identification is not necessary when the evidence is sufficient to permit the inference that the defendant on trial is the person who made the statements in question." United States v. Lopez, 758 F.2d 1517, 1520 (11th Cir.1985) (quoting United States v. Fern, 696 F.2d 1269, 1276 (11th Cir.1983)), cert. denied, --- U.S. ----, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986). Here, the Government established that the individual speaking to Clark had a Spanish accent and that Gomez was a Colombian national. Moreover, Clark testified that he had seen Bradshaw dial more than eight digits, suggesting that the person on the other line resided outside of Oklahoma. We feel that the evidence permits a reasonable inference that Gomez was the person who had threatened Clark on the telephone
 
 
 [5]
 Gomez argues that the telephone records do not conclusively establish that Gomez and Bradshaw actually spoke with each other. It is true that the pen register does not show whether a call was completed, and that its accuracy diminishes with long-distance calls. Similarly, the toll records do not conclusively establish whether Gomez and Bradshaw actually spoke with each other. We are also mindful of our earlier admonition, in another case involving Rusty Hall, that "mere telephone calls between two parties fail to establish a conspiracy." United States v. Dickey, 736 F.2d 571, 584 (10th Cir.1984). However, we do not view Gomez' criticism of the pen register and toll records as fatal, for circumstantial evidence need not conclusively exclude every other reasonable hypothesis and it need not negative all possibilities except guilt. United States v. Parnell, 581 F.2d 1374, 1379 (10th Cir.1978), cert. denied, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979)
 
 
 [6]
 Gomez' reliance on United States v. Traylor, 656 F.2d 1326 (9th Cir.1981), is misplaced. There the Ninth Circuit held that statements by coconspirators should have been excluded because they "were either mere conversations or 'casual admissions of culpability to someone [they] had decided to trust.' " Id. at 1332 (quoting United States v. Moore, 522 F.2d 1068, 1077 (9th Cir.1975), cert. denied, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976)). However, that court has consistently distinguished Traylor and its progeny when the out-of-court statement is designed to assure the continued participation of others in the conspiracy. See, e.g., United States v. Layton, 720 F.2d 548, 556-58 (9th Cir.1983), cert. denied, 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984); United States v. Whitten, 706 F.2d 1000, 1018 (9th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); United States v. DeLuca, 692 F.2d 1277, 1284 (9th Cir.1982). We think that Bradshaw's out-of-court statements fall within the latter category of cases
 
 
 [7]
 In Roberts, the Court added that the Government must ordinarily demonstrate the unavailability of the declarant. 448 U.S. at 65 & n. 7, 100 S.Ct. at 2538 & n. 7. However, the Court has recently held that this requirement does not govern the introduction in evidence of a coconspirator's statements under Rule 801(d)(2)(E). United States v. Inadi, --- U.S. ----, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); see United States v. Szabo, 789 F.2d 1484, 1487 n. 2 (10th Cir.1986). In any event, the parties in the instant case stipulated that Bradshaw suffered organic brain damage as a result of a cocaine overdose and that he was therefore incompetent to be a witness at trial
 
 
 [8]
 We are mindful of the Supreme Court's recent admonition in Lee v. Illinois, --- U.S. ----, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), regarding the weight to be accorded to this factor. In Lee, the Court held that the petitioner's Sixth Amendment right of confrontation was violated by the admission of a codefendant's confession, stating: "We reject respondent's categorization of the hearsay involved in this case as a simple 'declaration against penal interest.' That concept defines too large a class for meaningful Confrontation Clause analysis. We decide this case as involving a confession by an accomplice which incriminates a criminal defendant." Id. 106 S.Ct. at 2064 n. 5. We therefore do not view the adverse effect on Bradshaw's own penal interest as dispositive, but as one factor entitled to some consideration
 
 
 [9]
 Gomez points out that several Government witnesses testified that individuals in the cocaine business often lie to each other. However, there was also evidence that Bradshaw had offered to introduce Greg Clark to Gomez in Miami when the three men came face-to-face in a parking lot. At that point, of course, any attempt by Bradshaw to conceal his supplier's identity could easily have proven futile. In any event, we do not view a general tendency of dishonesty among cocaine dealers as dispositive of the Sixth Amendment inquiry
 
 
 [10]
 Hanlon also suggests that there was no evidence regarding involvement by J.D. "Sock" Bradshaw, one of the declarants, in the conspiracy. We disagree. Terry Smith testified that he once delivered cocaine to Greg Clark and gave the money to J.D. Bradshaw, who was to then give the money to David Bradshaw. Second, law enforcement officials found large quantities of cocaine in vehicles owned by J.D. Bradshaw on two different occasions while the conspiracy was in effect. Finally, David Bradshaw's telephone book listed "J.D." as one of the individuals participating in his cocaine scheme
 
 
 [11]
 As noted, the defendant's own out-of-court statements can be introduced in evidence without aid of the coconspirator exception, since they are also admissions of a party-opponent. Fed.R.Evid. 801(d)(2)(A); see United States v. Busch, 758 F.2d 1394, 1396-97 (10th Cir.1985)
 
 
 [12]
 Hanlon also suggests that the admission in evidence of David Bradshaw's out-of-court statements violated her Sixth Amendment right of confrontation. Brief of Appellant Hanlon at 9-11. However, Hanlon did not present this contention to the district court and she does not now identify those statements lacking in reliability. We note that Bradshaw was closely associated with Hanlon throughout the conspiracy and he had personal knowledge regarding each of the out-of-court statements in question. Thus the ruling did not constitute plain error with respect to Hanlon's right of confrontation
 
 
 [13]
 We note that the attorney subsequently detailed Tucker's cooperation with the Government in a letter addressed to the judge considering the Rule 35 motion. Furthermore the Government attorney in the instant case stated in his brief opposing Crocker's motion in limine: "Based on everything Mr. Tucker has done to date, [the United States Attorney's] office will join in [the] motion to reduce Tucker's sentence." II R. 280; see also II R. 287
 
 
 [14]
 Crocker also contends that Bradshaw's statement was hearsay and that the Government had not established an adequate foundation for the exception in Fed.R.Evid. 801(d)(2)(E). However, we do not feel this contention was properly preserved for appellate review. In making the motion to strike, defense counsel argued only that the testimony related to conduct outside the scope of the conspiracy. The hearsay contention was never presented to the district court. We will not consider the hearsay issue since "there is no showing of an impediment to the appellant that precluded his raising the issue in the trial court." United States v. Mitchell, 783 F.2d 971, 975 (10th Cir.1986); see United States v. Glover, 677 F.2d 57, 59 (10th Cir.1982) (refusing to consider hearsay contention because counsel's objection at trial asserted only that the evidence went beyond the bounds of the conspiracy alleged in the indictment)