**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**METROPOLITAN ENTERPRISES, INC.,
and Daniel P. Kavanaugh,
Defendants-Appellants.**

Nos. 82–2453, 82–2454.

United States Court of Appeals,
Tenth Circuit.

Feb. 24, 1984.

Robert B. Nicholson, Atty., Dept. of Justice, Washington, D.C. (William F. Baxter, Asst. Atty. Gen., Neil R. Ellis, Atty., Dept. of Justice, Washington, D.C., Alan A. Pason, Laurence K. Gustafson, Attys., Dept. of Justice, Dallas, Tex., with him on the brief), for plaintiff-appellee.

Andrew L. Lipps, Whitman & Ransom, Washington, D.C. (John M. Dowd, Whitman & Ransom, Washington, D.C., and D.C. Thomas, C. Merle Gile, Thomas, Gile & Martin, Oklahoma City, Okl., with him on the brief), for defendants-appellants.

Before McWILLIAMS and SEYMOUR, Circuit Judges, and BROWN *, Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

This case concerns a conspiracy among highway paving contractors to rig the bid-ding on contracts to repave portions of Interstate 35 in Oklahoma. On July 7, 1982, a grand jury returned an indictment charging Metropolitan Enterprises, Inc., and its president, Daniel P. Kavanaugh, for one count of conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and two counts of mail fraud in furtherance of the conspiracy. After a four-day jury trial in September 1982, Judge Russell denied defendants' motion for judgment of acquittal on the Sherman Act charge and granted their motion on the mail fraud counts. The jury found both appellants guilty of violating Section 1 of the Sherman Act, 15 U.S.C. § 1. After denying the appellants' post-trial motion for judgment of acquittal or alternatively, for a new trial, Judge Russell sentenced appellant Kavanaugh on November 15, 1982 to a term of imprisonment of two years and imposed a fine of $25,000. Metropolitan Enterprises, Inc., was fined $75,000. On appeal, the appellants raise five issues: 1) Whether the trial court properly admitted testimony as to co-conspirator's out-of-court statements; 2) whether there was sufficient evidence to sustain the jury's verdict finding appellants guilty of participating in bid-rigging conspiracy in violation of Section of the Sherman Act, 15 U.S.C. § 1; 3) whether appellants were unfairly surprised and prejudiced by a co-conspirator's testimony when the government had notified appellants of the witness' identity as a co-conspirator three days prior to trial; 4) whether the trial court erred in refusing to instruct the jury that, in the absence of an agreement in restraint of trade, it is not unlawful for competitors to obtain or exchange information concerning prospective bids; 5) whether Count One of the Indictment sufficiently states a Sherman Act offense. Each of these issues is treated hereafter.

In the summer of 1977, the Oklahoma Department of Transportation issued bid proposals for the repaving of four contiguous portions of Interstate 35, beginning at a

* Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by       designation.

boundary between Oklahoma County and Cleveland County and continuing for twenty-four miles south through Cleveland and McClain Counties to the town of Purcell, Oklahoma. The four sections were considered in two groups of two, one group in each of the two counties. Each contractor had the option of bidding on individual sections or of submitting a "tie-in" bid [1] for both sections in a group. Eighteen contractors, including Broce Construction Company, Brook and McConnell Construction Company, South Prairie Construction Company, and appellant Metropolitan Enterprises, Inc., obtained a bid proposal for one or more of the four projects.

Charles Ray Broce, the President of Broce Construction Company, who was then seventy-five years old, was semi-retired.[2] The only active participation he had in the company was to attend bid letting when asked by his employees to assist. Broce wanted to obtain all four contracts. On August 25, 1977, he traveled from his hometown, Dodge City, Kansas to Oklahoma City for the bid letting the next day. While staying at the Lincoln Plaza Hotel, he contacted Johnny McConnell of McConnell Construction Company, and Carl Foster, the then manager of South Prairie Construction Company in an attempt to "work out" the four jobs. Each agreed to submit a "complimentary bid" approximately ten percent above the Oklahoma Department of Transportation engineer's estimate. To "work out" a job, Broce explained that he tried to make arrangements with those contractors whom he believed to be the toughest competitors. Once that was accomplished, he simply tried to outbid the remaining legitimate bidders.[3]

On the morning of August 26, 1977, just a few hours before the bidletting, Broce received a telephone call from Kavanaugh at the Lincoln Plaza Hotel at approximately 10:00 a.m. The purpose of the call was to arrange a meeting "on the deal" concerning the four Interstate 35 jobs. Following the telephone conversation, Sam Beyer, the general superintendent of Broce Construction Company, drove Broce to Kavanaugh's office. Enroute to the meeting with Kavanaugh, Broce explained to Beyer his purpose in visiting Kavanaugh was to "strike a deal with him."[4] When they arrived, they saw Kavanaugh and another contractor, Haskell Lemon of Haskell Lemon Construction Company.

During the meeting, Broce and Kavanaugh discussed the four Interstate 35 jobs. Broce told Kavanaugh that he intended to obtain all four jobs. They then agreed to "a deal" where Broce Construction Company would subcontract the northernmost of the four sections to Kavanaugh if he was awarded all four, in return for which Kavanaugh "agreed to go along with" Broce and to "protect" Broce's bid. Broce stated that he had no preference whether Kavanaugh submitted a high bid or no bid at all, so long as Kavanaugh allowed him to bid the job high enough to make more money without having to "fight" for the contracts too hard.

Broce's testimony was corroborated and confirmed by Beyer, who was present at the meeting. Beyer stated that Broce and Kavanaugh "discussed the job, how they were going to bid it." Kavanaugh agreed to

---

1. The "tie-in" bid procedure permits a contractor to offer a lower combined price for the two projects if the State awards both projects to that contractor.

2. At time of the trial, Broce was serving a sentence at Fort Worth Correctional Institute resulting from a guilty plea for rigging the bids on a project in Kansas.

3. Broce described the purpose for and method to reduce bid competition. Tr. Vol. VII at 185–86: "[T]here's a few contractors that can take the work. And, what they do, if there's quite a

bit of work, we'll try to work out a job and get more money out of it. That's the way it was decided.... [W]e'll try to beat the field after we get, what we think the tough guys worked out. Then, we take a chance on maybe somebody else throwing in a bid."

4. Beyer on re-direct examination: Tr. Vol. VII at 259: The purpose of Broce's visit with Kavanaugh was [[t]o get him off the job, keeping him from bidding and making an agreement with him so he wouldn't be a fact[or]."

"respect"[5] Broce's bid if Broce would let him have the northern Cleveland County job. Beyer then telephoned Everett Taylor, another employee of Broce, at the hotel and told him that Lemon and Kavanaugh would respect our bids and that Taylor could prepare and submit Broce Construction Company bids at seven to eight percent higher than the engineer's estimate.

Alonzo Vance, Broce's son-in-law, testified on behalf of the government. He did not attend the meeting between Broce and Kavanaugh, but was present at Taylor's room at Lincoln Plaza Hotel before Broce and Beyer departed for Kavanaugh's office on the morning of August 26, and remained at the same room after their return. He said that Broce and Beyer told him that "we had made an arrangement with Metropolitan to sub them part of the job in return for not bidding." After the final bid price was determined, Vance took bid proposals to and filed them with the Oklahoma Department of Transportation on August 26, 1977.

On that afternoon at the bidletting, four contractors, including Broce Construction Company, Cummins Construction Company, and McConnell Construction Company, submitted bids on one or both of the projects in Cleveland County. Six contractors, including the same three named above, as well as South Prairie Construction Company, submitted bids on the McClain County projects. Metropolitan did not bid at all. In both projects, Broce Construction Company submitted tied bids that included the lowest total prices. It received all four contracts. Broce then subcontracted the northernmost portion of the work to Metropolitan.

## I

At trial, the district court, over appellants' objection, admitted the testimony of Beyer and Vance which related to Broce's out-of-court statements as declarations of a co-conspirator under Rule 801(d)(2)(E) of the Federal Rules of Evidence. While the appellants' acknowledge that there was evidence showing that Broce participated in a criminal conspiracy to rig bids with Foster and McConnell, they contend that the government failed to prove, by the preponderance of the evidence, independent of the statements of the co-conspirators, the appellants were participants of this conspiracy to violate the Sherman Act.

■ Under Rule 801(d)(2)(E) of the Federal Rules of Evidence, an out-of-court statement is not hearsay if it is offered against a party and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. Admissibility of such statement, however, is dependent upon the establishment of proof by a preponderance of the evidence that 1) there was a conspiracy; 2) the declarant and the particular defendant were members of the conspiracy; and 3) the statement was made during the course of and in furtherance of the conspiracy. *United States v. Andrews,* 585 F.2d 961 (10th Cir.1978). *See Anderson v. United States,* 417 U.S. 211, 218 n. 6, 94 S.Ct. 2253, 2259 n. 6, 41 L.Ed.2d 20 (1974). In *United States v. Petersen,* 611 F.2d 1313 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2895, 64 L.Ed.2d 854 (1980), we suggested certain procedures, referred to as the "preferred order of proof," to guide the district courts in this Circuit in deciding whether to admit hearsay statements of co-conspirators. This "preferred order of proof" procedure recommends that:

(1) The judge alone, pursuant to Rule 104(a) Fed.R.Evid., makes the determination as to admissibility of hearsay co-conspirator statements.

(2) The Court makes a threshhold determination based upon substantial independent evidence.

(3) It is preferable whenever possible to require the government to first introduce independent proof of the conspiracy and subsequent thereto, to establish the connection of the defendant with the conspiracy before admitting hearsay declarations of co-conspirators.

---

5. Tr. Vol. VII at 245.

(4) At the conclusion of all the evidence, the district court must determine as a factual matter whether the prosecution has shown by a preponderance of the evidence independent of the statement itself (a) that a conspiracy existed; (b) that the co-conspirator and the defendant against whom the co-conspirator's statement is offered were members of the conspiracy; (c) that the statement was made during the course and in furtherance of the conspiracy. If the district court concludes at this stage of the proceeding that the prosecution has not met its burden of proof on these issues, the statement should not be submitted in evidence. *Petersen, supra,* 611 F.2d at 1330–31.

■ At the outset, we note the district court was cognizant of the preferred order of proof procedure at the trial in determining the admissibility of the testimony of Beyer and Vance as co-conspirators. At the close of all the evidence, the district court found the government had met the requisite burden of proof by a preponderance of the evidence, independent of any hearsay statements, that a conspiracy to rig bids existed, the defendants against whom the co-conspiracy statements were offered were members of the conspiracy, and the statements were made in the course and of furtherance of the conspiracy to violate the Sherman Act. In denying the defendants' post-trial motion for acquittal or a new trial, the district court adhered to its previous ruling. The court found and concluded that "it is still convinced that the government satisfied its burden under *Petersen.*" From our review of the evidence in this case we conclude that there was sufficient evidence showing that appellants and Broce conspired with the other contractors to rig bids on contracts to repave portions of Interstate 35 in Oklahoma. Beyer was present and participated in Broce and appellants' meeting on the morning of August 26, 1977. In addition, the co-conspirators' Beyer and Vance, out-of-court statements admitted against appellants were clearly made during the course and in furtherance

of the conspiracy. We think the government unquestionably met its burden demonstrating the admissibility of Beyer's and Vance's statements.

Broce testified that he came to Oklahoma City to assist his employees with the bidletting. He wanted to obtain all four contracts. As soon as he was in town, he contacted several contractors, including Johnny McConnell, Bill Foster, and appellants, who were interested in bidding on this highway repavement project. They assured Broce that they would "respect his bid" so that his company could "take the job." Broce stated at the trial that he "worked out deals" with Foster, McConnell, and the appellants, whereby they would submit no bids or bid at an amount approximately ten percent above the engineer's estimate. Both Foster and McConnell submitted their bids about ten percent over the estimate and Broce's bids were just under that percentage. Appellants did not bid on any of the projects.

Because of the geographical location of Kavanaugh's asphalt plant and his showing of an interest in competing in these projects by taking out bid proposals, Broce perceived Metropolitan Enterprises, Inc., could be a serious competitive threat to him at least on some of these projects. Broce explained his reason for including the appellants was to ensure that the appellants would let him bid the jobs "without trying to make him fight too hard for them." In return for his agreement to "protect" Broce's bids, Broce would subcontract the paving of the northernmost section to Metropolitan. Appellants did in fact receive that subcontract and performed the work.

■ Appellants contend that the government failed to show Metropolitan Enterprises, Inc., was a potential competitor to Broce for one or more of the projects, because the government introduced no evidence showing that he had sought to obtain cost quotations of material and labor in preparation for a bid. While intent to restrain competition is an element of a criminal violation of the Sherman Act, *United*

*States v. United States Gypsum Co.,* 438 U.S. 422, 436–43 & n. 20, 98 S.Ct. 2864, 2873–76, & n. 20, 57 L.Ed.2d 854 (1978), we think the proof of the requisite intent in the instant case was satisfied by showing that the appellants knowingly joined and participated in a conspiracy to rig bids. *United States v. Cargo Service Stations,* 657 F.2d 676, 684, *reh. denied,* 664 F.2d 291 (5th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). The district court did not act improperly in admitting the co-conspirators' out-of-court statements as declarations of a co-conspirator under Rule 801(d)(2)(E) of the Federal Rules of Evidence.

## II

■■■ The appellants next challenge the sufficiency of evidence against them. They contend that even including the co-conspirators' statements, there was insufficient evidence to prove Kavanaugh intentionally participated in a conspiracy to rig bids. In accordance with the established precedent in reviewing a criminal conviction, the appellate court must examine the evidence in a light most favorable to the government and then decide if there was sufficient proof, direct or circumstantial, to justify a finding of guilt beyond a reasonable doubt. *United States v. Harris,* 534 F.2d 207, 213 (10th Cir.1975), *cert. denied,* 429 U.S. 941, 97 S.Ct. 359, 50 L.Ed.2d 311 (1976). If the substantial evidence supports the verdict, it cannot be set aside. *United States v. Themy,* 624 F.2d 963 (10th Cir.1980). Our examination of the entire record, viewed with appropriate inferences in the light most favorable to the government, shows there is sufficient evidence to support the jury verdict.

The government presented its case through the testimony of nine witnesses and sixty-nine exhibits. Broce testified that he was asked by Sam Beyer and Everett Taylor to come to Oklahoma City to "help them with the bids." He stated that he intended to obtain the four Interstate 35 construction jobs in McClain and Cleveland Counties. After receiving a collusive assurance from two of the potential bidders, McConnell and Foster, Broce went to see Kavanaugh with Sam Beyer. Broce stated that the purpose of the meeting with Kavanaugh was to see if he could "strike a deal" with Kavanaugh on the four projects. Testimony shows that Broce considered Metropolitan Enterprise, Inc., could be a serious competitor on at least some of the projects; and Kavanaugh acknowledged that he could bid competitively on the northernmost project. Both Broce and Beyer testified that at the meeting between Broce and Kavanaugh, they had reached an agreement whereby Broce would let Kavanaugh do one part of the four jobs nearest to his asphalt plant if he would respect Broce's bids. After that discussion, Beyer called Taylor and Vance and instructed them to finalize the total bid amount in light of the fact that "[Haskell] Lemon and Kavanaugh were going to respect our bids and bid above our bids."

■■ Appellants argue that Beyer's testimony was unbelievable because it was inconsistent with that given before the grand jury. They also urge us not to assign any weight to Vance's testimony because it was entirely based on what Broce and Beyer told him. We do not find these arguments persuasive. The jury here was properly instructed to consider the testimony· of these witnesses with care. The evaluation and resolution of the credibility of witnesses are matters for the jury, not for the appellate court. As to Vance's testimony, we have decided that his testimony is admissible under the co-conspirator statement exception to the hearsay rule. We now conclude that Vance's testimony is weighty, in that it corroborates and strengthens the testimony of Beyer and Vance concerning the collusive agreement with Kavanaugh and his participation in a price-fixing scheme.

■■■ A conspiracy is a combination of two or more persons acting in concert to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The evidence must show circumstances to warrant a jury finding that the

conspirators had a unity of purpose or a common design and understanding. *American Tobacco Company v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 1129, 90 L.Ed. 1575 (1946). A co-conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy. *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947). The agreement need not be shown to have been explicit. It can be inferred from the facts and circumstances of the cases. *Iannelli v. United States,* 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 1289 n. 10, 43 L.Ed.2d 616 (1975). Our examination of the evidence, with a view most favorable to the government, leads us to conclude that there is substantial proof, direct or circumstantial, together with reasonable inferences to be drawn therefrom, to sustain the burden of proving that the appellants were guilty of intentionally participating in a conspiracy to rig bids beyond a reasonable doubt.

### III

Appellants also contend that they were unfairly surprised and prejudiced by the testimony of Alonzo Vance, whose identity as a witness was not disclosed to the defense before the trial. They claim that their defense ability was "substantially impaired" when the government misled them into thinking Vance would not be a witness, because the government provided no *Jencks* material relating to Vance in making its Jencks Act disclosure on September 6, 1982. We agree with the district court's ruling in finding that this contention is without merit. While a defendant in a non-capital case has no right to discover

lists of prospective government witnesses, *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977), we note that the government had satisfied its required discovery obligation by furnishing the defense with the identity of co-conspirators, including Alonzo Vance, three days before Vance was called to testify. Furthermore, Rule 16(a)(2) of the Federal Rules of Criminal Procedure does not authorize a defendant to discover statements made by the government witnesses, *United States v. Collins,* 652 F.2d 735, 738 (8th Cir.1981), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982), except as provided under Jencks Act, 18 U.S.C. § 3500 (1976). The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only after the witness has testified on direct examination at trial. We conclude that the district court properly held that there was no Jencks material before Vance testified at trial. *United States v. Crouthers,* 669 F.2d 635, 641 (10th Cir.1982).

### IV

Appellants assert that the district court erred in refusing to instruct the jury that, in the absence of an agreement in restraint of trade, it is not unlawful for competitors to obtain or exchange information concerning prospective bids.[6] They contend that even though the district court instructed the jury that the entering into a subcontract may not be evidence of illegality, without the requested instruction, the jury could have believed that it is illegal for "a defendant to talk to a potential competitor regarding his or the potential competitor's

---

**6.** Appellants' requested instruction is reproduced as follows: "You are instructed that in the absence of any agreement or conspiracy in restraint of trade and interstate commerce, it is not unlawful for competitors to exchange or obtain information necessary for the preparation and submission of a legitimate bid proposal. There is no requirement of secrecy in the law with respect to such information. In the absence of such an agreement or conspiracy in restraint of trade in interstate commerce, mere association of persons who are conspiring to restrain trade, or knowledge that something

illegal is going on between them, by themselves, do not, in law, constitute proof of participation in a conspiracy by another.

You are further instructed that in the absence of any agreement of conspiracy in restraint of trade in interstate commerce, it is not unlawful for a prospective bidder on a project to be interested in or concerned about the bid quotations that its competitors will make on a particular project. Nor is it a violation of the Sherman Act for a bidder merely to learn from another bidder the amount of the bid that his competitor proposes to make."

interest in submitting or not submitting bids."

While a defendant in a criminal case is entitled to adequate instructions on the theory of defense, providing there is sufficient evidence before the jury to reasonably support such a theory, *Beck v. United States*, 305 F.2d 595, 599 (10th Cir.), *cert. denied*, 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123 (1962), we have held repeatedly that the sufficiency of instructions is not determined by giving or failing to give particular instructions, but rather by reviewing the instructions as a whole. *United States v. Burns*, 624 F.2d 95, 105 (10th Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980); *United States v. Westbo*, 576 F.2d 285 (10th Cir.1978); *United States v. Pepe*, 501 F.2d 1142 (10th Cir. 1974). Moreover, it is well established that "even when charging the jury as to the defendant's theory of the case, the exact language offered by the defendant need not be followed." *United States v. Hall*, 536 F.2d 313, 330 (10th Cir.1976); *see Elbel v. United States*, 364 F.2d 127, 134 (10th Cir. 1966).

Our examination of the record indicates that the district court succinctly and correctly instructed the jury on this issue. It began its instructions with a recitation of the Indictment and the essential elements of the offense charged. The court went on to charge the jury that "the fact that [various persons] may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy." "What the evidence in th[is] case must show beyond a reasonable doubt, in order to establish proof that a conspiracy existed," the Court stated, "is that the members in some way or some manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." To preclude the jury from finding guilt based on certain legitimate business activities, the Court took care to instruct the jury that "[t]he mere fact a defendant entered into a sub-contract does not establish a conspiracy since this act may be consistent with ordinary competitive behavior in a free and open market." But the jury could consider evidence, direct or circumstantial, to conclude whether "the subcontract resulted from independent acts of business concerns freely competing in the open market, or whether it resulted from a mutual agreement, or arrangement to submit collusive, non-competitive, or rig bids or to withhold bids" as charged.

We conclude that the instructions given by the Court were comprehensive and sufficient for the jury to find a violation of Section 1 of the Sherman Act beyond a reasonable doubt. *See United States v. Posey*, 647 F.2d 1048, 1053 (10th Cir.1981).

V

Appellants' last contention is that Count One of the Indictment fails to state an offense under Section 1 of the Sherman Act, because it fails to allege that appellants acted with the requisite anticompetitive intent or knowledge. Prior to trial, appellants moved to dismiss the Indictment on the same ground. In denying the motion, the district court found the requisite intent was implicit in the overt acts charged. Our examination of the Indictment indicates that the Indictment adequately and sufficiently apprised appellants of their participations in a conspiracy in violation of Section 1 of the Sherman Act, a conspiracy statute, and was not faulty for the reasons urged.

Section IV of the Indictment states that Federal-Aid highways, including the highway which is the subject of this Indictment, are part of a nationwide network over which vehicles move in a stream of interstate commerce. The Indictment further alleges that both people and goods are transported over this network; and that a substantial, continuous and uninterrupted flow of equipment and essential materials from outside Oklahoma to these Oklahoma contractors existed; and that the activities of the appellants and their co-conspirators

were within the flow of, and substantially affected, interstate commerce.

Under Section V of the Indictment, the appellants, along with unindicted co-conspirators, were charged with entering into an agreement and action to submit collusive, noncompetitive and rigged bids, or to withhold bids on specified Federal-Aid highway projects within the State of Oklahoma, beginning at least as early as August, 1977, and continuing thereafter until at least September 1978. In furtherance of this conspiracy, the Indictment alleges that the conspirators discussed the submission of prospective bids; agreed among themselves upon a low bidder; agreed that appellant Metropolitan Enterprises, Inc., would receive a specified subcontract to perform certain work on the projects in question; and submitted intentionally high, noncompetitive bids, or withheld bids. The effects of this conspiracy, alleged under Section VI of the Indictment, are the fixing of the prices of the Federal-Aid highway projects in question at artificial, noncompetitive levels; restraint of competition for the award of Federal-Aid highway projects; and the denial of the benefits of free and open competition for the award of the specified projects.

To determine the sufficiency of an indictment the court examines the entire document to ascertain whether it contains the elements of the offense charged and apprises the accused of the nature of the charge so as to enable him to prepare a defense and to plead the judgment in bar. *Russell v. United States,* 369 U.S. 749, 764, 83 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962); *United States v. Buzzard,* 540 F.2d 1383, 1388 (10th Cir.1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977).

While requisite intent must be pled and proved in any criminal prosecution arising out of the Sherman Act, *United States v. United States Gypsum Co., supra,* 438 U.S. 422, 436–43 & n. 20, 98 S.Ct. 2864, 2873–2876, & n. 20, 57 L.Ed.2d 854 (1978), the "charge of conspiracy to violate a criminal law has implicit in it the elements of knowledge and intent." *Schnautz v. United States,* 263 F.2d 525, 529 (5th Cir.), *cert. denied,* 360 U.S. 910, 79 S.Ct. 1294, 3 L.Ed.2d 1260 (1959); *accord, Madsen v. United States,* 165 F.2d 507 (10th Cir.1947). The appellants were charged in Count One of the Indictment with a conspiracy to restrain trade by discussing, and agreeing to rig bids on certain highway projects. It is clear from a reading of the Indictment that the appellants, by conspiring, did intend to produce the anticompetitive effects. *United States v. Cargo Service Stations, Inc., supra,* 657 F.2d 676, 681–84 (5th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982); *United States v. Azzarelli Construction Co.,* 612 F.2d 292, 297–98 (7th Cir.1979), *cert. denied,* 447 U.S. 920, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). *See also United States Gypsum, supra,* 438 U.S. at 444–45, 98 S.Ct. at 2877. Although the word "intent" was not expressly used, we conclude that the Indictment, reading it in its entirety, provides the appellants with sufficient information to adequately prepare their defense and to protect their right not to be placed twice in jeopardy for the same offense. *United States v. Wilshire Oil Company,* 427 F.2d 969, 972 (10th Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970).

WE AFFIRM.