ARNOLD PONTIAC–GMC,
INC., Appellant,

v.

BUDD BAER, INC. t/d/b/a Budd Baer Buick-Pontiac, a Pennsylvania corporation, William L. Oliverio, an individual t/d/b/a Oliverio Buick-Opel and Oliverio Buick-Opel, Inc., a Pennsylvania corporation, successor to William L. Oliverio, t/d/b/a Oliverio-Buick-Opel, Samson Buick Co., Corporation, a Pennsylvania corporation, and Leebro Management, Inc., a Pennsylvania corporation t/a/d/b/a Samson Buick Co., Successor to Samson Buick Co., and Massey Buick, Inc., a Pennsylvania corporation.

No. 85–3602.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
April 28, 1986.

Assigned Aug. 1, 1987.

Decided Aug. 24, 1987.

Gordon F. Harrington and Belinda Dunmire Attwood, Greenlee, Derrico, Posa, Harrington & Rodgers, Washington, Pa., for appellant.

Stewart M. Flam, Dickie, McCamey & Chilcote, P.C., and David Max Baer, Pittsburgh, Pa., for appellees Budd Baer, Inc. and William L. Oliverio, Oliverio Buick-Opel, Inc.

Bernard D. Marcus, Daniel H. Shapira and Susan A. Gromis, Titus, Marcus & Shapira, Pittsburgh, Pa., for appellee Massey Buick, Inc.

Before SLOVITER and STAPLETON, Circuit Judges, and LONGOBARDI, District Judge *.

* Hon. Joseph J. Longobardi, United States District Court for the District of Delaware, sitting by designation.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

## I.

Appellant Arnold Pontiac-GMC, Inc. (Arnold Pontiac), an automobile dealer with a Pontiac and GMC truck franchise, brought this antitrust action against four automobile dealers with Buick franchises from the same area,[1] alleging that the defendants had conspired together and with General Motors Corporation (GMC) to prevent Arnold Pontiac from receiving a franchise to sell Buick automobiles. Arnold Pontiac claimed that the alleged conspiracy violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2. The district court granted summary judgment for the defendants.

Briefly, the facts alleged are that from 1969 to 1980, Arnold Pontiac, an authorized dealer of Pontiac automobiles and GMC trucks, sought to add a Buick franchise to its dealership in Houston, Pennsylvania. Prior to 1980, GMC had refused to award such a franchise unless Robert S. Arnold, the co-owner of Arnold Pontiac, agreed to provide a more modern facility in a more desirable location. In February 1980, Arnold again applied to GMC for a Buick franchise, stating that he had made substantial improvements to his existing facility. GMC officials then visited the site. Although Arnold was never explicitly told he would be awarded a franchise, he was given order forms for new Buicks.

On April 3, 1980, the Better Buy Buick Association, an organization of Pittsburgh area Buick dealers, held a sales promotion meeting with R.F. Pfeiffer, who was Buick's Assistant Zone Manager for Pittsburgh. Pfeiffer prepared a memorandum to G.B. Shane, the Zone Manager for Buick in Pittsburgh, reporting that at the conclusion of the sales promotion meeting, he had a meeting with Messrs. Gray, Oliviero, Baer and Samson (representatives of each of the four defendant dealers) which was requested by Gray "to discuss Buick's closing of the open point in Canonsburg, Pa." The "open point" apparently refers to the absence of any Buick dealer in the Canonsburg area.

The Pfeiffer memorandum reported that Samson, one of the dealers, told Pfeiffer that the "Advertising Dealer Group" had a meeting "and agreed" that if Buick granted a new franchise in Arnold's area, "they, as a group would take action not to purchase any of [Buick's] programs or cooperate with us in any of our endeavors." App. at 110. According to the memorandum, the dealer representatives questioned Pfeiffer in particular concerning the plan to give a Buick franchise to Arnold Pontiac. Pfeiffer reported that he gave them no information, and stated:

They may want to meet with you and myself this next week some time to review our position. I also advised them that it was their prerogative to take what action they deemed necessary, but I first suggested that they discuss this situation with you. Mr. Gray asked that you call him Monday some time.

App. at 111.

Shortly thereafter, Shane returned to Arnold the order forms for new Buicks that Arnold had filled out. Shane explained that Buick had not yet acted on his franchise application. In September 1980, Buick officials informed Arnold that his facility was inadequate. At that time, Arnold was asked to sign a "Facility Modification" letter, which would obligate him to build or acquire new facilities within three years. Arnold apparently refused to do so. In January 1981, Arnold was told that his franchise application had been rejected.

Arnold Pontiac then filed an action against GMC, alleging that GMC's actions violated the Sherman Act and the Automobile Dealers' Day in Court Act, 15 U.S.C. §§ 1221-25 (1982). After the district court granted summary judgment for GMC on the Sherman Act count in that case, plaintiff instituted a second action against the dealers, filing the complaint in this case.

Arnold Pontiac's complaint seems to contain two claims. First, it claims that the

1. The dealers, sued in their corporate or business names as set forth in the caption, trade as Budd Baer Buick-Pontiac, Oliverio Buick-Opel, Inc., Samson Buick Co., and Massey Buick, Inc.

defendants "combined and conspired with each other and with General Motors Corporation in restraint of trade" to prevent Arnold Pontiac from receiving a Buick franchise. Complaint ¶ 18, App. at 10. Arnold Pontiac's brief explains this paragraph as alleging a "horizontal market allocation" in violation of section 1 of the Sherman Act. *See* Brief of Appellant at 24. Its brief also characterizes defendants' activity as a "group boycott". *See id.* at 26. We are unable to determine from the sparse allegations of plaintiff's complaint and its brief whether it regards these terms as synonymous. Arnold Pontiac's second claim is that defendants have conspired to monopolize in violation of section 2 of the Sherman Act. Neither Arnold Pontiac's complaint nor its brief elaborates on this claim.

The district court granted summary judgment for defendants in two brief orders. The first order, dated October 4, 1985, gave summary judgment for all defendants except Samson Buick.[2] This order contains no explanation of the basis for the court's decision, other than a citation to the Supreme Court's opinion in *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). App. at 315. Samson Buick then moved for summary judgment stating that it is situated in exactly the identical position as the other defendants. On October 11, 1985, the district court gave summary judgment for Samson Buick in a one line order.

Thereafter, on Arnold Pontiac's appeal, this court reversed the district court's grant of summary judgment for the defendant GMC in the first suit. *Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564 (3d Cir.1986) (hereafter *Arnold Pontiac I*). GMC filed a petition for rehearing. We stayed consideration of that petition pending this court's reconsideration on remand from the Supreme Court in *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238 (3d Cir.1983), *rev'd and remanded sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986),

and *Tunis Bros. Co. v. Ford Motor Co.*, 763 F.2d 1482 (1985), *vacated and remanded for further consideration in light of Matsushita*, — U.S. —, 106 S.Ct. 1509, 89 L.Ed.2d 909 (1986). As a result, we stayed our decision in this case pending disposition of the petition for rehearing in *Arnold Pontiac I.*

This court then issued the following opinions in turn. First, on remand of *Matsushita*, we held that there was no additional evidence on the issue of conspiracy beyond that considered by the Supreme Court, and we therefore affirmed the grant of summary judgment for the defendants. *In re Japanese Elec. Prods. Antitrust Litig.*, 807 F.2d 44, 48 (3d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). Second, on reconsideration following remand in *Tunis*, we held that our initial opinion reversing the district court's grant of summary judgment and remanding the matter for trial was consistent with the requirements of *Matsushita*. *Tunis Bros. Co. v. Ford Motor Co.*, 823 F.2d 49, 50–51 (3d Cir.1987). Finally, GMC's petition for rehearing in *Arnold Pontiac I* was denied by this court on July 29, 1987. It is now timely for us, after this long hiatus, to consider Arnold Pontiac's contention that the district court erred in granting summary judgment for the defendants in this case.

## II.

■ In the only authority cited by the district court in its order granting summary judgment, *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984), the Court held that a plaintiff seeking damages for violation of section 1 of the Sherman Act must present evidence "that tends to exclude the possibility" that the alleged conspirators acted independently. During the pendency of this appeal, defendants filed letter memoranda arguing that additional support for the district court's order is

---

**2.** The district court docket sheet reveals that the district court granted summary judgment for Leebro Management on May 9, 1985. Arnold

Pontiac apparently does not appeal this decision. *See* App. at i and ii.

provided by the Supreme Court's later decision in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In *Matsushita*, the Supreme Court "again consider[ed] the standard district courts must apply when deciding whether to grant summary judgment in an antitrust conspiracy case." 106 S.Ct. at 1351. The plaintiff in such a case must establish that there is a genuine issue of material fact as to whether defendants entered into a conspiracy in violation of the antitrust laws that caused plaintiff cognizable injury. *Id.* at 1355–56.

In *Matsushita*, because there was no direct evidence of the conspiracy that allegedly caused the plaintiffs their injury, a conspiracy to monopolize the American market through predatory pricing, plaintiffs had to rely on inferences from circumstantial evidence. The Court reiterated the holding of *Monsanto* that if the defendant's conduct is consistent both with permissible competition and with illegal conspiracy, evidence of such conduct "does not, standing alone, support an inference of antitrust conspiracy." *Matsushita*, 106 S.Ct. at 1357.

The Court held that the absence of any plausible motive for defendants to have conspired predatorily for two decades bore "on the range of permissible conclusions that might be drawn from ambiguous evidence." 106 S.Ct. at 1361. The Court continued, "if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy." *Id.*

This case is unlike *Matsushita* for two reasons, each of which alone would require us to reverse the district court's grant of summary judgment. In the first place, here plaintiff, unlike the plaintiffs in *Matsushita*, has produced direct evidence of a conspiracy. We considered such evidence in detail in *Arnold Pontiac I* and review it just briefly here. The complaint in this case alleges a horizontal conspiracy by the area's Buick dealers to keep Arnold Pontiac from getting a Buick franchise. Plaintiff

produced a memorandum written by GMC representative Pfeiffer to Shane, the Buick Zone Manager, describing Pfeiffer's meeting with dealers of the Better Buy Buick Association. This supports plaintiff's contention of concert of action among the defendants relevant to the alleged conspiracy. This is precisely the type of evidence that was lacking in *Matsushita*. *See* 106 S.Ct. at 1361. In addition, plaintiff produced the circumstantial evidence that GMC had taken several steps toward granting Arnold Pontiac a Buick franchise prior to that meeting, and that it was only after the meeting that GMC reasserted the issue of the inadequacy of Arnold Pontiac's facilities.

After reviewing this evidence in *Arnold Pontiac I*, we concluded that, "[r]eviewing this evidence and drawing the inferences from the underlying facts in the light most favorable to Arnold Pontiac as the party opposing the summary judgment motion, *Goodman* [*v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977) ], we must infer that the Better Buy Buick Association's conduct contributed to GMC's decision not to award Arnold the Buick franchise." *Arnold Pontiac I*, 786 F.2d at 573. We concluded that Arnold Pontiac had satisfied the requirement of *Monsanto* that a distributor must come forward with "evidence that tends to exclude the possibility that [GMC acted] independently." *Arnold Pontiac I*, 786 F.2d at 574 (quoting *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1471).

Whether Arnold Pontiac's claim in the case is characterized as a "horizontal market allocation" or a "group boycott", it requires a showing of concerted activity to fall within section 1 of the Sherman Act. We assume that the district court granted summary judgment in this case because it believed plaintiff had come forward with insufficient evidence of conspiracy. If the evidence produced in *Arnold Pontiac I*, an action by the dealer against the manufacturer, was sufficient to support the inference that the manufacturer did not act independently in refusing to extend the franchise to another line, *a fortiori* that

evidence, which refers to a concert of action by the other dealers, "tends to exclude the possibility" that any such dealer acted independently. *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1471.[3] In this respect, this case is similar to *Pennsylvania Dental Ass'n. v. Medical Service Ass'n. of Pennsylvania*, 815 F.2d 270, 272 (3d Cir.1987), where we reversed the grant of summary judgment for antitrust defendants because, *inter alia*, of the "direct evidence of concerted action."

The second reason why *Matsushita* is of little or no applicability in this case stems from the differing inferences that can be drawn from the available evidence. In this case, unlike *Monsanto* which was referred to at length in *Matsushita*, we are not faced with a terminated dealer or disappointed franchisee who sues the manufacturer and seeks to draw the inference from complaints by the dealer's competitors that the manufacturer acted in concert. *Compare Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 111 (3d Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981). Arguably, the manufacturer's conduct in such a situation could be "as consistent with permissible competition as with illegal conspiracy." *Matsushita*, 106 S.Ct. at 1357.

Here the action is based on concerted action by Arnold Pontiac's putative competitors, the Buick dealers, to deprive it of a Buick franchise in which it would directly compete with them. We need not resort to the type of learned treatises referred to in *Matsushita* to recognize that here, unlike in that case, there was a "plausible motive" for the alleged concerted action, *i.e.*, to have one less competitor in a limited market. *Matsushita* directs us in evaluating summary judgment in section 1 Sherman Act cases to consider whether "the inference of conspiracy is reasonable." 106

S.Ct. at 1357. Here, unlike in *Matsushita*, the alleged combination among the Buick dealers would be rational. One dealer complaining to GMC might have a negligible effect. The effect on GMC of the combined strength of its principal dealers in that area would hardly be negligible.

Because plaintiff has produced evidence that the combination among the Buick dealer defendants in fact existed and because there is a plausible motive for such a combination and its existence is not unreasonable, we will vacate the district court's grant of summary judgment for defendants and remand the Sherman Act section 1 claims to the district court.

### III.

In its complaint, Arnold Pontiac also alleged violations of section 2 of the Sherman Act. Those allegations were sparse indeed. The complaint alleges only that "[a]s a result of the Defendants' conspiracy and the conspiracy with General Motors Corporation to monopolize the market for Buick automobiles in interstate commerce, Arnold Pontiac was denied a dealership in the Buick Division." Complaint ¶ 21, App. at 11. Plaintiff's brief on appeal has offered no elaboration. It states merely, "Arnold contends that the actions of the Better Buy Buick Dealers' Association (Defendants) and Buick's reaction thereto constitute *conspiracy to monopolize* within the intendment of § 2 of the Sherman Act." Brief of Appellant at 23–24 (emphasis in original).

Arnold Pontiac's section 2 claim against GMC was apparently similarly unenlightening. The court affirmed the district court's grant of summary judgment because it found that Arnold Pontiac had not gone beyond the allegations of its complaint in response to GMC's motion for summary

---

**3.** Defendants suggest that a different result is warranted in this case than in *Arnold Pontiac I* because they contend that the Pfeiffer memorandum, which constitutes the principal direct evidence of a concert of action among them, is inadmissible hearsay as to them. Summary judgment, of course, looks only to admissible

evidence. Plaintiff, however, has suggested several bases upon which the memorandum may be admissible. The district court did not rely on the inadmissibility of the Pfeiffer memorandum and has not ruled on the evidentiary issue. It should have the opportunity to address it in the first instance.

judgment. *Arnold Pontiac I,* 786 F.2d at 574–75.

This holds true in the present case as well. Plaintiff has not referred us to a single item of evidence that supports its claim of conspiracy to *monopolize.* Plaintiff has proffered no good reason why we should reinstate its claim under section 2 of the Sherman Act. Not only is "[a] court … not required to extend the right to trial to 'anyone who files an antitrust complaint setting forth a valid cause of action … notwithstanding the absence of any significant probative evidence tending to support the complaint,'" *Arnold Pontiac I,* 786 F.2d at 575 (quoting *First National Bank v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)), but it is also not required to commit defendants to a trial when plaintiff has suggested no theory of recovery under section 2 of the Sherman Act. Thus, we will affirm the district court's grant of summary judgment on Arnold Pontiac's claim under section 2 of the Sherman Act.

### IV.

For the reasons set forth above, we will affirm the district court's grant of summary judgment to defendants on Arnold Pontiac's claims under section 2 of the Sherman Act, we will reverse the district court's grant of summary judgment to defendants on Arnold Pontiac's claims against them under section 1 of the Sherman Act, and we will remand for further proceedings in accordance with this opinion. Each party to bear its own costs.