**UNITED STATES of America, Plaintiff,**

v.

**Bernard D. REICHER, Defendant.**

**Cr. No. 90–229 JP.**

United States District Court,
D. New Mexico.

Nov. 5, 1991.

**902**

J. Oliver Lee, Jr., Dallas, Tex., William L. Lutz, Asst. U.S. Atty., Albuquerque, N.M., Duncan S. Currie, Dept. of Justice, for plaintiff.

Teresa E. Storch, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

PARKER, District Judge.

The subject of this Opinion is defendant's motion, filed September 26, 1991, for judgment of acquittal following discharge of the jury, pursuant to Federal Rule of Criminal Procedure 29(c). A trial in this case was held on September 16, 17, 19, 20 and 23, 1991. The jury returned its verdict on September 24, 1991, convicting on one count and acquitting on two counts of a three-count indictment.[1] Defendant moves this court to set aside the jury's guilty verdict on Count I, which charged the defendant with conspiring to rig bids in unreasonable restraint of trade in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 (1982). Having thoroughly considered the pleadings, facts and law, and being otherwise fully advised in the matter, I conclude that defendant's motion should be granted.

Count I of the indictment charged defendant Reicher with conspiring to rig bids for a contract with Los Alamos National Laboratory: specifically, beginning in 1985 and continuing through 1986, Reicher and accomplices participated in a conspiracy to rig quotations for the award of a contract to supply the Laboratory with a temporary structure known as the Optical Channel Assembly ("OCA"), which would provide a controlled environment for laser testing. The OCA facility, as designed, was to be double-walled and constructed of metal-clad urethane panels.

At trial, the evidence showed that the defendant did in fact conspire to submit a sham bid. On June 7, 1985 the Laboratory sent out an OCA bid package to prospective bidders, whose names the Laboratory had compiled and which included the defendant's company, B.D. Reicher & Son, Inc. of Scottsdale, Arizona. Because the bidding process was competitive, the Laboratory required the submission of at least two bids by the deadline of June 28, 1985. As the bid deadline approached, however, defendant learned of the possibility that his would be the only bid. Although Laboratory contracting procedures permitted single-source, non-competitive contracting, defendant testified that Laboratory personnel had informed him that budgetary limitations would not allow adequate time to reconstitute the contracting process in that manner; it was Reicher's understanding that, if the Laboratory could not award the contract through the competitive process, the funds then budgeted for the OCA project would no longer be available for that purpose at that time. Consequently, Reicher persuaded James Giolas, president of Giolas Sales Company of Salt Lake City, Utah, to submit another bid.

Like Reicher's company, Giolas Sales Co. appeared on the Laboratory's list of potential bidders, but, it is clear from the evidence that Giolas' company was not capable of performing the contract if awarded. Giolas Sales Co. simply did not have the means of satisfying the narrow specifications of the project, as both Giolas and Reicher knew at the time. In addition, New Mexico was not part of the business area within which Giolas Sales Co. operated. Nonetheless, at Reicher's insistence and based on Reicher's assurance that the bid would be awarded to B.D. Reicher & Son, Inc. and not to Giolas Sales Co., Giolas signed a blank bid proposal and, on June

---

1. The jury found defendant not guilty of conspiracy to defraud the government in violation of 18 U.S.C. § 371 (Count II) and of mail fraud in violation of 18 U.S.C. § 1341 (Count III).

25, 1985, forwarded it by overnight express conveyance to Reicher's office in Scottsdale. Reicher, or his employee Jerry Budner under Reicher's instructions, filled out the blank, but signed, Giolas bid proposal and, on June 28, 1985, submitted both the Reicher and the Giolas bids to the Laboratory. Having received two bids, Reicher's for $832,917.00 and Giolas' for $852,615.00, the amount inserted by employee Budner as Reicher instructed, the Laboratory awarded the contract to Reicher.

■ Section one of the Sherman Act makes illegal contracts, combinations, or conspiracies "in restraint of trade." 15 U.S.C. § 1. *See United States v. Sargent Elec. Co.*, 785 F.2d 1123, 1126 (3rd Cir. 1986), *cert. denied*, 479 U.S. 819, 107 S.Ct. 82, 93 L.Ed.2d 36 (1986). Specifically, a "conspiracy to submit collusive, non-competitive, rigged bids is a *per se* violation of the statute." *United States v. Brighton Bldg. & Maintenance Co.*, 598 F.2d 1101, 1106 (7th Cir.1979), *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). Although the Act nowhere contains language that a conspiracy to rig bids, to be actionable, requires an agreement between or among competitors, "[i]t is as if the Sherman Act read: 'An agreement among competitors to rig bids is illegal.'" *Id.* Consistent with this reading, the Tenth Circuit has adopted the following definition of Sherman Act bid rigging:

'Any agreement between *competitors* pursuant to which contract offers are to be submitted or withheld from a third party constitutes bid rigging per se violative of 15 U.S.C. section 1.'

*United States v. Mobile Materials, Inc.*, 881 F.2d 866, 869 (10th Cir.1989), *cert. denied*, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990) (quoting *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 325 (4th Cir.1982)) (emphasis added). *See also United States v. W.F. Brinkley & Son Constr. Co.*, 783 F.2d 1157, 1160 (4th Cir.1986); *United States v. Koppers Co, Inc.*, 652 F.2d 290, 294 (2nd Cir.1981), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981); *United States v. Beachner Constr. Co.*, 555 F.Supp. 1273,

1276 (D.Kan.1983), *aff'd*, 729 F.2d 1278 (10th Cir.1984); *United States v. Seville Indus. Machinery Corp.*, 696 F.Supp. 986, 989 (D.N.J.1988). *Cf. United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 472–74 (10th Cir.1990) (market allocation conspiracy requires an agreement between competitors); *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F.Supp. 1062, 1075 (D.Colo.1991) (an agreement between entities that are not competitors does not violate section one of the Sherman Act).

The issue for decision then is whether Reicher and Giolas were "competitors," as comprehended and required by the statute and its interpreting case law. To that end, the government advances two arguments in support of the jury verdict on Count I. First, the government contends that Giolas was a "potential" competitor. Horizontal restraints between or among *potential* competitors, though perhaps not as pernicious, are no less violative of section one of the Sherman Act than agreements made by actual competitors. *See Transource International, Inc. v. Trinity Industries, Inc.*, 725 F.2d 274, 279–80 (5th Cir.1984). *See also Otter Tail Power Co. v. United States*, 410 U.S. 366, 377, 93 S.Ct. 1022, 1029, 35 L.Ed.2d 359 (1973) (use of monopoly power to exclude potential entrants to marketplace is a violation of section two of the Act). The section one crime at issue here, "[t]he crime of conspiracy to rig bids[,] … is essentially an agreement among actual or potential competitors which restrains competition in or effecting interstate trade or commerce." *Beachner Constr.*, 555 F.Supp. at 1277. *See Sargent*, 785 F.2d at 1127; *United States v. Ashland–Warren, Inc.*, 537 F.Supp. 433, 445 (M.D.Tenn.1982). Conversely, no violation occurs where the parties to an agreement not to compete do not include at least two actual or potential competitors. *United States v. MMR Corp. (LA)*, 907 F.2d 489, 498 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1388, 113 L.Ed.2d 445 (1991).

■ The evidence at trial established that Reicher and Giolas, either individually or through their respective companies,

were not potential or actual competitors. By this, I mean that neither was a competitor in the relevant market. Although a charge of *per se* violation of the Sherman Act proscribes inquiry into competitive effects, "it does not excuse identification of the relevant markets." *Sargent,* 785 F.2d at 1127. "An agreement among persons who are not actual or potential competitors in a relevant market is for Sherman Act purposes *brutum fulmen.*" *Id. See United States v. Glenn Berry Manufacturers, Inc.,* 1991 WL 98851 (E.D.Pa., June 4, 1991). In this instance, the relevant market was a narrow one, limited to contracting to supply the Laboratory with the OCA facility.[2] As such, the unassailed evidence showed that in no way could Giolas or Giolas Sales Co. be plausibly characterized as a potential or actual competitor of or as a "competitive threat" to Reicher. *United States v. Metropolitan Enterprises, Inc.,* 728 F.2d 444, 449 (10th Cir.1984); *MMR Corp.,* 907 F.2d at 497–98. *See Otter Tail,* 410 U.S at 377, 93 S.Ct. at 1029. Not only was Giolas not a potential competitor, whose competitive threat could have been coopted by a bid rigging scheme, he was, in fact, a solicited outsider, capable of aiding and abetting but incapable of full membership. Giolas was strongly encouraged by Reicher to become involved in a process that he otherwise would not have entered, a process in which Giolas' potential to compete on his own was a nullity.

Second, the government asserts that Giolas was a "putative" competitor. By this argument, the government puts its finger on what may have been the most reprehensible aspect of Reicher's conduct. The thrust of this argument does not go to whether Giolas was in fact a competitor, but instead is directed to whether the Laboratory's contracting officials believed it so, when they went forward with the bidding process and when they evaluated the reasonableness of the two bid amounts. The government relies heavily on language from *United States v. Finis P. Ernest, Inc.,* 509 F.2d 1256 (7th Cir.1975), *cert. denied,* 423 U.S. 874 & 893, 96 S.Ct. 142 & 191, 46 L.Ed.2d 105 & 124 (1975).[3] In *Ernest* the defendant submitted a bid to the City of East St. Louis for a proposed sanitary sewer project. The city rejected the bid because no other bids were made and because the bid amount substantially exceeded the city engineer's estimate for the cost of the job. The city then put the job up for re-bidding, receiving only two bids, one from Ernest and one from another company, Modern Construction. Ernest was awarded the contract. Subsequently, both companies were indicted and convicted under section one of the Sherman Act for conspiracy to bid rig. On appeal to the Seventh Circuit, however, the issue was not whether the two firms were competitors but "[w]hether the evidence was sufficient to prove a conspiracy between the defendants to rig bids." *Id.* at 1258. After reviewing the evidence that the two bids had been prepared collusively, the panel commented: "There was other evidence that the Modern bid was not a serious one and was submitted so that there would be an appearance of competitive bidding." *Id.* at 1262.[4] The court went on to cite further

---

2. However, even if defined in broader terms, the relevant market could not reasonably include the business activity of Giolas Sales. Inclusion of that company in the relevant marketplace would require specifying some "whens" and "wheres" that the evidence simply did not specify or support. *Sargent,* 785 F.2d at 1127. In terms of some bigger picture, there was no evidence that this was a traditional tit-for-tat agreement in which one party refrained from competing in order later or elsewhere to benefit from the reciprocal conduct by the other. Giolas reluctantly went along with the scheme in order to preserve the legitimate business relationship that he and Reicher had already, but fairly recently, established. Giolas testified that he feared that his refusal to submit another bid,

as Reicher was pressuring him to do, would jeopardize his business arrangement with Reicher to supply refrigeration equipment in Utah.

3. According to the government, the Seventh Circuit's holding in *Ernest* was "that evidence that a bid had been submitted in order to create the appearance of competitive bidding was sufficient to support conviction for bid rigging." Government's Response, filed October 9, 1991, 4. The government is wrong, and its reliance on *Ernest* is misplaced.

4. The creation by the defendants of such an appearance, however, was not the basis for liability, but instead was evidence in support of a

evidence supporting the position that Modern's bid was a sham, concluding that the evidence was sufficient to prove a conspiracy.

■ Without a doubt the submission of complementary bids in order to deceive, by creating an appearance of competition or by justifying an otherwise excessive bid, is objectionable, but, in the absence of a bid-rigging agreement between or among competitors, such conduct is not a violation of section one of the Sherman Act. Creating an appearance of competition is not by itself enough. In the antitrust context, courts have often used the term "putative competitors" to describe conspirators to an anticompetitive scheme. The government, however, misconstrues the meaning of "putative competitors," by arguing that such a usage implies that bidders only have to appear, from the subjective standpoint of the victim, to be competitors in order for a conspiracy between or among them to be actionable. Such a subjective belief, however, is not enough, if even necessary, because the bidders must in fact be competitors, actual or potential.

■ As used by the courts, the term "putative competitor" commonly connotes one of two meanings, neither of which supports the government's position. The more prevalent use is merely a descriptive statement of fact: if would-be competitors have joined in an anticompetitive conspiracy, they are, in that instance, not actually in competition, but are supposed or apparent competitors.[5] *See Arnold Pontiac–GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3rd Cir.1987); *Fishman v. Estate of Wirtz*, 807 F.2d 520, 573 (7th Cir.1986) (Easterbrook, J., dissenting in part); *United States v. David E. Thompson, Inc.*, 621 F.2d 1147, 1149 (1st Cir.1980); *Ashland–Warren*, 537 F.Supp at 438–45. As formulated by the case law, the phrase "putative competitor" connotes a specialized type of conspirator. And, underlying the positive

description is the normative notion that the commercial actors in question should be competitors in substance not simply in form. An actor foils competition by " 'engag[ing] in a conspiracy with those who should have been [the actor's] competitors.' " *Id.* at 444 (quoting *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 125 (7th Cir.1978)). The second usage of "putative competitors" conveys once more the notion of "potential competitors" and could just as easily read that way. *See Standard Oil Co. v. United States*, 337 U.S. 293, 318, 69 S.Ct. 1051, 1066, 93 L.Ed. 1371 (1949); *United States v. Columbia Steel Co.*, 334 U.S. 495, 535, 68 S.Ct. 1107, 1127, 92 L.Ed. 1533 (1948); *United States v. Western Elec. Co.*, 673 F.Supp. 525, 579 (D.D.C.1987), *modified*, 900 F.2d 283 (D.C.Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 283, 112 L.Ed.2d 238 (1990). Accordingly, while Giolas may have been an apparent competitor, he was not a putative competitor.

■ Finally, in the alternative to arguing that Giolas was a competitor, the government asserts that he and Reicher formed an actionable conspiracy to rig bids, notwithstanding Giolas' status as a non-competitor. The government cites the principle that "a person 'may be guilty of conspiring although incapable of committing the objective offense.' " *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 224 n. 59, 60 S.Ct. 811, 845 n. 59, 84 L.Ed. 1129 (1940) (quoting *United States v. Rabinowich*, 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915)). In particular, a non-competitor can violate section one of the Sherman Act by participating in a bid-rigging scheme. *See Metropolitan Enterprises*, 728 F.2d at 449–50; *MMR Corp.*, 907 F.2d at 498. The government's argument, however, founders because it is impossible to join a conspiracy that does not exist. To be actionable under section one of the Sherman Act, a conspiracy must include more than one competitor. In this instance, Giolas was

---

finding of conspiracy. Whether the two firms were competitors was not an issue before the appellate court.

5. Under this connotation, a commercial actor, to be a putative competitor, must simultaneously be both an apparent and potential rival. Both the subjective and objective aspects are necessary.

incapable of *forming* a violative conspiracy with Reicher because Reicher was the only competitor agreeing to the scheme. Likewise, Giolas was incapable of *joining* a conspiracy, for Reicher, acting either individually or through his company, could not form such a conspiracy on his own. *See Id.*

■ By the evidence adduced at trial, the government failed to show that Reicher violated the Sherman Act's *per se* rule against bid rigging. More broadly, the government failed to show that the tenor of the Act was in some way compromised.[6] *Per se* rules are appropriate "for conduct which is manifestly anticompetitive and should be 'invoked when surrounding circumstances make the likelihood of anticompetitive conduct so great as to render unjustified further examination of the challenged conduct.'" *Palmer v. BRG of Georgia, Inc.*, 874 F.2d 1417, 1432 n. 13 (11th Cir.1989), *modified,* 893 F.2d 293 (11th Cir.1990), *rev'd on other grounds,* — U.S. —, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (quoting *National Collegiate Athletic Ass'n v. Board of Regents of University of Oklahoma,* 468 U.S. 85, 103–04, 104 S.Ct. 2948, 2961, 82 L.Ed.2d 70 (1984)). Looking behind the *per se* rule against bid rigging to the economic rationale that underlies the rule, the basis for condemning Reicher's conduct does not sound in anti-trust law. The government simply did not show that Reicher's conduct was either anticompetitive or an unreasonable restraint of trade. No rival was impeded from bidding[7] and no rival entered into an agreement not to compete. While clearly reprehensible, Reicher's acts did not constitute the pernicious conduct comprehended and targeted by the Act.

IT IS THEREFORE ORDERED that:

1. Defendant Bernard D. Reicher's motion, filed September 26, 1991, for judgment of acquittal following discharge of the jury, pursuant to Federal Rule of Criminal Procedure 29(c), is granted;

2. The jury's guilty verdict on Count I, finding defendant guilty of conspiring to rig bids in unreasonable restraint of trade in violation of the Sherman Antitrust Act, 15 U.S.C § 1 (1982), is hereby set aside; and,

3. The indictment is dismissed in its entirety with prejudice.

---

6. The Act targets specific conduct "in restraint of trade." In interpreting this language, I note that to the extent that the Act's intent is unclear, the rule of lenity operates in a defendant's favor "in resolving doubt about expression of legislative will defining crimes...." *United States v. Villano,* 816 F.2d 1448, 1455 (10th Cir.1987). *See also United States v. Dashney,* 937 F.2d 532, 537–39 (10th Cir.1991); *United States v. Brzoticky,* 588 F.2d 773, 777 (10th Cir.1978). While I find that the Act is not ambiguous as to Reicher's conduct and, in that respect, does not encompass it, any finding of ambiguity would conscript the rule in defendant's favor.

7. I do observe, although the government has not addressed this issue and I am not considering it as a ground for my holding, that as to any argument that Reicher's conduct might have prevented the Laboratory from re-bidding the contract, using then-available funding, or somehow frustrated the institution of another bidding process at a later time, using subsequent funding, the evidence did not support such an assertion, either as to intent or outcome.